[Crim. No. 1921. In Bank.—May 20, 1915.]

## THE PEOPLE, Respondent, v. CHARLES E. T. OXNAM, Appellant.

CRIMINAL LAW—MURDER—CAPACITY TO COMMIT CRIME.—One who has sufficient mental capacity to appreciate the character of his act, knew that it violated the rights of another and was in itself wrong and prohibited by the laws, and would entail punishment, and thus could appreciate the character and comprehend the consequences of his act, is to be judged accordingly, regardless of how deficient he may have been otherwise.

ID.—REOPENING CASE FOR FURTHER TESTIMONY—DISCRETION OF TRIAL COURT.—Where after resting, defendant offered the testimony of a new witness admittedly of a similar character to much testimony already heard upon the question of mental capacity but dealing with a slightly later period, it is not an abuse of discretion by the trial court to refuse to reopen the case and allow the testimony to be heard as it would be most unreasonable to assume that such testimony could possibly have affected the verdict.

ID.—NEWLY DISCOVERED EVIDENCE—DISCRETION OF TRIAL COURT—REVIEW ON APPEAL—APPLIED TO CASE AT BAR.—The question of the effect of newly discovered evidence is addressed to the discretion of the trial court and a new trial should be granted on this ground only when the effect of such evidence is such as to render a different result probable, and on appeal the decision of the trial court will be disturbed only when the appellate court can plainly see that this discretion has been abused. In the case at bar, no satisfactory showing being made as to why the results of examinations made after the trial were not obtained before trial, and it not appearing that the evidence would have produced a different result, the order denying a new trial will not be reversed.

ID.—JUVENILE COURT—AGE OF DEFENDANT.—The superior court has jurisdiction to proceed with the trial of a criminal prosecution against a defendant under the age of eighteen years, where no request to

have the matter submitted to the juvenile court under the Juvenile Court Act (Stats. 1913, p. 1285), was ever made to the superior court or to the committing magistrate, although the evidence adduced at the trial may have shown that the defendant was under that age.

ID.—AGE OF DEFENDANT—DUTY OF SUPERIOR COURT.—No claim based on section 19 of that act can be maintained in the appellate court when the question of age was not determined by the trial court, and no claim to the benefit of such provision was made prior to the appeal, notwithstanding that the evidence at the trial may have indicated the age of defendant, since there is no duty upon the superior court to take any action in the matter in the absence of a suggestion or request that it do so.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

George A. Hooper, for Appellant.

U. S. Webb, Attorney-General, and Robt. M. Clarke, Deputy Attorney-General, for Respondent.

ANGELLOTTI, C. J.—Appellant and one Glenn Witt were jointly informed against for the crime of murder, alleged to have been committed December 22, 1914. They were tried separately and appellant was convicted of murder in the first degree and adjudged to suffer death. This is an appeal from such judgment and from an order denying a motion for a new trial.

The circumstances attendant upon the commission of the homicide are stated in the opinion of this court in *People* v. *Witt*, (Crim. No. 1922), *ante*, p. 104, [148 Pac. 928]. It appears that it was this appellant who actually shot and killed William M. Alexander, the deceased, while he (appellant) and Witt were in Alexander's home, which they had burglariously entered in the night-time for the purpose of committing larceny therein. The sole defense was that appellant was "an imbecile, feeble-minded, mentally deficient and without sufficient reasoning power to understand the nature of his acts."

It is not claimed that the evidence was insufficient to sustain the verdict of the jury on the question of mental capa-

city. The sole test prescribed by the law in such cases has been stated so many times by this court that it is hardly necessary to restate it here. If appellant, as substantially stated by the trial court to the jury, had sufficient mental capacity to appreciate the character and quality of his act, knew and understood that it was a violation of the rights of another and in itself wrong, knew that it was prohibited by the laws of the land and that its commission would entail punishment and penalties upon himself, if he had the capacity thus to appreciate the character and comprehend the possible or probable consequence of his act, he is responsible to the law for the act and is to be judged accordingly, however deficient mentally he may otherwise have been. A review of the record satisfies us that not only does the evidence elicited on the trial sufficiently support the verdict so far as this question is concerned, but also that no other verdict could properly have been rendered. The testimony of his witnesses covered the whole period of his life from infancy down to a very short time before the commission of the crime, at which time, according to the claims of his counsel, substantiated by certain evidence, he was between 17 and 18 years of age. A careful analysis of the mass of testimony given in support of the claims of mental incapacity when made in the light of the uncontradicted evidence as to the circumstances of the homicide, and the conduct of appellant in regard thereto, shows to us no substantial basis for a conclusion that appellant was so mentally deficient that he was incapable of distinguishing between right and wrong with relation to the act with which he was charged. At best, the testimony relied on simply showed substantially that he was not normal mentally, that as a child he was morose, timid, and possessed of a violent temper, that he stole, that he was somewhat peculiar, was not bright, was backward in his studies, was deficient in memory, etc. While some of the witnesses testified that in their opinion he was of unsound mind, or insane, their reasons given were not such as to show the degree of insanity or want of mental capacity necessary under the law to exempt a person from responsibility, and some stated that in saying they regarded him as of unsound mind, they meant that they did not consider him bright or mentally efficient. Some of the witnesses for appellant on this question freely admitted that they considered him capable of distinguishing

between right and wrong with relation to such an act as that here involved, and we find no substantial testimony to the contrary. While Dr. Allen, who had examined appellant somewhat cursorily, said he was defective mentally and that he thought he was an "imbecile," he also testified that he would not pronounce him of unsound mind, and that he was not insane in the ordinary acceptation of the term. According to the uncontradicted evidence, appellant and his companion deliberately planned the commission of the burglary, went to the Alexander home in the night-time for the purpose of executing their plan, appellant being armed with a pistol, effected entrance through a window which they opened, carefully removed their shoes to prevent detection, and proceeded with their contemplated work of appropriating such valuables as they could find. When discovered in the bedroom of deceased, appellant still persisted in an effort to accomplish the purpose of the entry, in the struggle that ensued shot the deceased, and finally fled and sought a place of concealment. When found with Witt in the room in which they had taken refuge, he at first sought to explain a wound received by him in the leg while in the house of deceased as one received elsewhere, but finally confessed his guilt of the charge here involved. His recollection of what took place on the night of the homicide was clear and explicit, and his account was substantially in accord with what was testified to by the other witnesses. It would be difficult indeed to reconcile the situation thus presented with any theory of mental incapacity on his part sufficient in degree to exempt him from responsibility under the law. As practically said before, the evidence introduced in support of the plea of mental incapacity was not, to our minds, of such a nature as to raise any serious doubt on the question.

Three points are made for reversal.

1. It is contended that the trial court erred in refusing to allow defendant to reopen his defense after he had rested, for the purpose of calling and examining one additional witness in support of his claim of mental incapacity. The record shows simply this: The defense rested and a recess was taken. When court reconvened, defendant's attorney said he had been informed of one more witness, not even naming him, whose testimony would be very short. The judge inquired if the proposed testimony was anything different from

what had already been given. Defendant's attorney said the witness was one covering a period later on, later than any period already covered, and that the testimony was somewhat different, not much, but covered a period after he left home The judge said that he anticipated the witness would testify somewhat as the others. Defendant's attorney said that he had not talked with the witness. The judge said he thought the ground had been fully covered and directed the prosecution to proceed with the rebuttal.

While the matter of allowing a party to reopen his case is one committed to the discretion of a trial court, if it had been made to appear to the lower court that the proposed testimony was of any substantial importance to defendant, we should say that in the exercise of that discretion an opportunity should have been given him to introduce it, notwithstanding his previous announcement that he rested. But no such showing was made in the lower court, and there is nothing in the record to warrant an assumption that the testimony could have assisted defendant in the slightest degree. Confessedly the proposed evidence was not different in character from that elicited from a long line of witnesses who had testified as to their observations of defendant at various times from shortly after his birth to a short time, a few months at most, before the homicide. We have already referred to the character of this testimony. The only difference suggested between this testimony and the proposed testimony was that the latter referred to a time later than that referred to by any previous testimony. It would be most unreasonable to assume that it could possibly have affected the verdict.

2. The motion for a new trial was based in part on the ground of newly discovered evidence relative to the mental capacity of the defendant. It is the established rule in this state that a new trial should be granted on this ground only where the newly discovered evidence is such as to render a different result probable, and it has been said that the question as to the effect upon the case of newly discovered evidence is from its nature peculiarly one that is addressed to the discretion of the trial court. "Unless the appellate court can plainly see that this discretion has been abused, that the showing made was of such a character as to make it manifest that the case would or should result differently on a new trial in view of the newly discovered evidence, the order of

the trial court refusing a new trial will not be disturbed."
(*People* v. *Sing Yow,* 145 Cal. 1, [78 Pac. 235].) The affi-
davit of the attorney for appellant filed in support of the
motion was to the effect that he had information to the effect
that a lady in San Diego, naming her, would testify that
when a small child, appellant had suffered a severe attack
of brain fever. Evidence had been introduced on the trial
to the effect that when a small child appellant was very ill
and had convulsions. The attorney's affidavit further showed
that other persons, naming them, would testify that as a boy
appellant "was mentally deficient," and "not bright." It
is clear that as to all this there was nothing on which any
claim of abuse of discretion on the part of the trial court can
properly be based. The other affidavits filed were: 1. One of
Dr. Ernest Bryant Hoag, simply to the effect that he had on
January 19 and 20, 1915, examined appellant, his examina-
tion covering some three hours, and that in his opinion, based
on Johns Hopkins University revised Binet-Simon Intelli-
gence Scale, appellant has a mentality less than that of a
normal child of ten years of age; 2. One of Dr. Charles W.
Waddle, to the effect that he is head of the department of
Psychology and Education of the California State Normal
School, Los Angeles, holds the degree of Ph.D., and has had
considerable experience in "mental testing," that he has
tested defendant, using the Stanford revision of the Binet-
Simon mental tests, and that he is convinced that defendant
is feeble-minded and not morally accountable for his acts to
any greater degree than a child of corresponding "mental
age" may be; 3. One of William T. Root, Jr., to the effect
that he is a member of the department of Psychology and
Education in said normal school, that Dr. Grace M. Fernald
and he examined defendant, and that in his opinion, using
the Binet-Simon tests, defendant is of the "mental age" of
eight years and that he would class him as a "low grade
moron"; 4. Two of Dr. Grace M. Fernald, psychologist at
said normal school and the California State School for Girls
at Whittier, having a Ph.D. degree, to the effect that she ex-
amined defendant on January 16, 1915, and found him to be
a feeble-minded individual of the "moron type," grading
eight years "mental age" by the Binet-Simon test, and that
she does not consider him morally responsible for his acts
any more than a child of eight years of age would be

responsible; and, 5. One of Dr. Thomas J. Orbison, a physician and surgeon, to the effect that he had examined the defendant by the Binet-Simon method or scale, and concludes therefrom that he is of the "mental age" of eight years, or "one year above the imbecile age," and that the Binet-Simon method is the most satisfactory method in use for determining the mental age of a person. All of the examinations of defendant on which these statements were based were made apparently after the trial. No satisfactory reason was shown by any of the affidavits presented on the motion for the failure to ascertain prior to the trial by such examinations as were had subsequent thereto, the matters stated in these affidavits. But regardless of this, we are satisfied that we cannot properly hold, in the light of all the evidence given on the trial, that the showing made by the affidavits was such as to make it manifest that a different result would or should be reached on the question of defendant's mental capacity in view of the alleged newly discovered evidence. This being the situation, we are not warranted in reversing the order of the trial court denying the motion for a new trial.

3. There was evidence given on the trial by appellant's witnesses tending to show that his birth occurred in May, 1897, which would make him only 17 years and 7 months of age at the time of the commission of the crime with which he was charged, and only one month older at the time of his trial in the superior court. Apparently the only evidence to the contrary was the fact that he had represented himself as over 18 years of age some time before the crime when he applied for enlistment in the naval militia, and his appearance, it being testified that physically he appeared older than his real age. Basing his claim upon the assertion that the evidence on the trial was substantially without conflict on the question of age, appellant's counsel insists that the superior court was without jurisdiction to try and sentence appellant in view of the provisions of the act commonly known as the Juvenile Court Act, approved June 16, 1913 (Stats. 1913, p. 1285). In section 19 of that act it is provided that "no dependent or delinquent person under eighteen years of age shall be prosecuted for crime until the matter has first been submitted to the juvenile court by petition as herein provided, or by certificate of the lower court as provided in section sixteen (eighteen) hereof."

Within the meaning of said act the words "delinquent person" include any person who violates any law of the state, or any ordinance of any town, etc., defining crime, and which involves moral turpitude. (Sec. 4.) It is assumed, although the record does not affirmatively so show, that the matter of this charge was never submitted to the juvenile court. Apparently no suggestion of the age of appellant as a basis for arresting the prosecution was ever made in the superior court, the evidence on that subject being elicited in the ordinary course of the trial as evidence bearing on the issues being tried by the jury. No request was made of the trial court relative to such matter either before the trial, on the trial, or on the motion for new trial. There is no pretense that any suggestion of age was made to the committing magistrate. The claim of any irregularity in this behalf is made for the first time on this appeal, and is based solely on what the evidence given on the trial shows as to appellant's age.

Consideration of the provisions of the Juvenile Court Law satisfies us that the provision relied on is not to be taken as affecting the jurisdiction of the superior court in any criminal prosecution. The design of the various provisions relative to investigation by the juvenile court of the cases of delinquent persons under the age of eighteen years is, of course, to afford an opportunity for investigation of the case of any delinquent person by a judge of the superior court specially charged with such work, with a view to ascertain whether the delinquent person is a fit and proper subject to be dealt with under the reformatory provisions of the act, rather than under the laws generally applicable to offenses. With this design in view, it is made the duty of judges, upon proper suggestion and upon the finding of certain facts to do certain things. By section 18 of the act, whenever a deposition or complaint is filed in any court other than a superior court charging a person with crime, *"and it shall be suggested* to the judge, etc., that the person charged is under 18 years of age," it is made the duty of the judge to suspend all proceedings and examine into the question of age, and if, "from such examination, it shall appear to the satisfaction of said judge . . . that said person is under the age above specified," he shall certify the matter to the juvenile court, and "immediately thereupon all proceedings against the said person on said charge shall be suspended until said juvenile

court shall issue its mandate. . . . directing the court . . . to proceed.'' It will be observed from this that even in the case of a proceeding in an inferior court, there is no *want of jurisdiction* implied as to persons who are in fact under 18 years of age, but simply a suspension of proceedings, when upon *''suggestion''* to the judge that the delinquent is under that age, he has satisfied himself that the delinquent is under 18 years of age and has so certified to the juvenile court. There is nothing in the language used in this section to suggest the idea that in the absence of any suggestion, inquiry, and determination by such judge, there is any want of jurisdiction to proceed under the general law relating to crimes, simply because it may subsequently. be developed that the delinquent was in fact under eighteen years of age. In fact, the language expressly requires the judge himself to be satisfied on the question of age before he certifies the matter to the juvenile court at all, and unquestionably it was contemplated that in the absence of any such determination by such judge and any proceeding in the juvenile court, the case should proceed in the ordinary way and that the order or judgment of the judge should be valid and immune from any collateral attack based on the Juvenile Court Act. Section 19 of the act, at the end of which is the provision specially relied on here, provides for a proceeding in the juvenile court ''whenever it is claimed that any person under the age of twenty-one years is a neglected, dependent or delinquent person,'' the same to be commenced by the filing of a verified petition praying that such an adjudication be made. In said proceeding the court is authorized to make such order ''as is meet in the premises,'' including, in the event that it determines that a delinquent minor is not a fit and proper subject to be dealt with under the reformatory provisions of the act, an order that the proceeding be dismissed and the delinquent ''prosecuted under the general law.'' Then follows the provision specially relied on here. We regard this provision as in no way going to the jurisdiction of the superior court to proceed under the general law in the matter of any indictment or information filed therein charging a public offense. It is certainly clear that no claim based on this provision of the act can be maintained in an appellate court after conviction and judgment under the general law, where no claim under the act was made prior to the appeal, and there has

never been any investigation and determination as to the age of the offender. Such is the situation here, according to the record, if we assume in accord with defendant's theory that his case was never presented to the juvenile court. The age of defendant was not an issue tried and determined in the superior court by either the judge presiding or by the jury, was not even suggested to the trial judge for trial and determination, and we have no finding thereon. In other words, we have no judicial determination at all that the defendant was, in fact, under eighteen years of age, and the proceedings in the superior court did not call for any determination on that question. In the absence of such a trial and determination on the question of age we have no warrant for dealing with this case as subject to the provisions of the Juvenile Court Act upon the assumption that defendant was in fact under eighteen years of age, however much evidence as to that matter elicited on the trial from defendant's witnesses may indicate such to be the situation. Nor can it be held in view of the circumstances of this case as shown by the record and already detailed that there was any error committed by the superior court in this matter. As we have said, action of that court looking to investigation under the Juvenile Court Act upon the theory that defendant was under eighteen years of age was never invoked or even suggested, and whatever might have been the duty of the court in the event of such a suggestion or request, a matter which it is not necessary here to consider, we are satisfied that the mere fact that certain evidence elicited on the trial of a defendant for a crime tended to show that he is under eighteen years of age does not require the superior court to take any such action on its own motion.

We find nothing in the record warranting a reversal.

The judgment and order denying a new trial are affirmed.

Melvin, J., Shaw, J., Henshaw, J., Lorigan, J., Lawlor, J., and Sloss J., concurred.