[Crim. No. 1228. Third Appellate District.—November 14, 1932.]

THE PEOPLE, Respondent, v. ANTHONY LUZOVICH, Appellant.

C. I. Bennington for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The defendant was charged with the murder of his father. He was convicted of manslaughter and sentenced to imprisonment in the state prison for a term not to exceed ten years. From this judgment an appeal was perfected.

It is contended the court erred in admitting in evidence an alleged involuntary confession of the defendant, and other evidence to which objections were made; that the

court failed to instruct the jury on its own volition regarding the defense of justifiable homicide according to the provisions of section 197 of the Penal Code, and that the defendant should have been tried in the juvenile court.

The defendant, who was but seventeen years of age, lived with his father and mother at Oroville. The family had lately moved to California. They were Slavonians and were very poor. Domestic trouble existed between the husband and wife. The defendant had been severely punished by his father. There was evidence that the deceased had choked his wife and that he had threatened to poison and kill both his wife and the defendant. The night before the homicide a quarrel occurred between the husband and wife. The defendant and his father had been placer mining on the Feather River with poor success. They left for this location early on the morning of the homicide. The defendant took with him on this occasion a loaded revolver which he concealed beneath a large rock near the point where his father was panning for gold. This fact was unknown to the father. The defendant was working at the river some distance from his father. No quarrel appears to have occurred between them on this morning prior to the shooting. The father called to his son inquiring about his success. The defendant testified that he returned to his father, who then proceeded to abuse him for his lack of success and charged him with idleness. The defendant claims that when he reached a point near the rock where he had concealed the revolver, his father cursed him and drawing a pocket-knife started to rush toward him. When the father reached a point about twenty feet from the rock beneath which the revolver was concealed, the defendant crouched behind the rock and securing the revolver repeatedly fired upon his father. At the second shot, the father turned and was shot twice in the back. One bullet passed through his neck. He was hit five times. He dropped and immediately died from the effect of the wounds. The defendant ran to his father and, seizing the knife which had fallen to the ground, he cut the cord which was attached to his watch, and taking the watch and purse containing a few coins, he hid them in the brush near by. He did not take from the person of his father a tobacco can which contained particles of gold worth eight or ten dollars. Leav-

ing the body of his father where it had fallen, he returned to their home at Oroville and told his mother of the killing. At her suggestion, he immediately went to the sheriff's office and reported that his father had been murdered and robbed. An investigation was promptly made. Certain circumstances surrounding the tragedy did not match with the defendant's story. The officers became suspicious of him. He was not formally arrested, but was taken in custody and placed in the ward for the insane at the county jail, where he remained over night. He asked to see his mother, but was refused permission to do so. He was repeatedly questioned by the officers and finally admitted the homicide. The alleged confession was taken in shorthand by a stenographer. It was subsequently transcribed and signed by the defendant. The defendant was charged with murder. The family was without means and the court appointed an attorney to defend him. He was convicted of manslaughter. From this judgment of conviction he appealed.

It is contended the defendant, who was but seventeen years of age, should have been tried by the juvenile court; that the superior court was without jurisdiction to try him upon the charge of murder. The record does not disclose the fact that the court was aware of the defendant's age until some time during the progress of the trial. The defendant's age was not suggested to the court as provided by section 6 of the Juvenile Court Act, by his attorney or otherwise. It is not mandatory that a defendant under the age of eighteen years who is charged with a crime shall be tried by the juvenile court, unless his age "shall be suggested or shall appear to the judge". It is not a jurisdictional requirement that a minor under eighteen years of age shall be tried in the juvenile court. That privilege is waived by failure to call the age of the minor to the attention of the court. (14 Cal. Jur. 151, sec. 40; *People* v. *Oxman*, 170 Cal. 211 [149 Pac. 165]; *People* v. *Tossey*, 85 Cal. App. 435 [259 Pac. 488].) There is therefore no merit in the contention that this case was not lawfully tried in the superior court.

The defendant's written statement concerning the manner in which he committed the homicide was properly admitted in evidence. It is competent evidence without a preliminary showing that it was voluntarily made. This

statement is not a confession of guilt. It is an admission of the circumstances attending the affair. The defendant acknowledged that he shot and killed his father, but throughout the statement he insists that he acted in necessary self-defense to prevent the deceased from attacking him with a knife. The first assertion of the defendant which is contained in this challenged statement is that, ''This murder happened in self defense.'' He then proceeded to relate the facts regarding his father's previous acts of cruelty toward him and his mother, together with his threats to kill them. This conduct of his father was assigned as his reason for taking with him and concealing the revolver on the morning of the homicide. He said in that regard, ''I thought I would take the gun for protection that morning.'' He asserted that his father cursed him and rushed at him with the open knife at the very time of the shooting. He said, ''I came back there where he was working and he asked me how I was getting along. I told him there was no luck. . . . He got mad, he drew his knife and was going to try to stab me. I had a gun hid in the bushes, I ran for the gun as he was going to charge at me. I shot two times, then he started to run away from me and I shot once more, then later he was charging at me again, and I shot two more times, then he fell. I threw the gun in the river, I took his pocket book, watch and the knife he had, and hid it.'' While this statement contains some details which appear to be inconsistent with the defendant's claim of shooting his father in necessary self-defense, it is not a confession of guilt. It is an acknowledgment of the killing accompanied with a persistent claim that the homicide was committed in necessary self-defense. This is the exact theory upon which his defense was conducted. At the trial he became a witness in his own behalf.

■ A confession is restricted to an acknowledgment of guilt. It does not apply to a mere statement of facts from which guilt may be inferred. An admission of facts which contains a claim of innocence of the crime involved or which asserts a justification therefor, is not a confession in contemplation of law, which requires preliminary proof that it was voluntarily made, to render the statement competent evidence at the trial of the accused for the offense charged. (8 Cal. Jur. 98, sec. 194; 16 C. J. 715, sec. 1464; 16 C. J.

626, sec. 1243; *People* v. *Miller,* 122 Cal. 84 [54 Pac. 523]; *People* v. *Fowler,* 178 Cal. 657, 664 [174 Pac. 892].)

While there was an attempt to show this statement was procured by means of coercion, while the defendant was held in custody by the officers and that they offered to ''help him out all they could'', in the event of his admission, these facts were contradicted. There is a conflict of evidence regarding the question as to whether the statement was made by the defendant voluntarily and without promise of leniency.

■ The admissibility of an alleged confession of guilt depends upon the circumstances attending the procuring of the statement. In determining whether the statement was made freely and voluntarily without intimidation or offer of reward, the court has a reasonable discretion in passing upon the weight of the evidence and the credibility of witnesses. Except for an abuse of this discretion, an order admitting or rejecting a confession of guilt will not be disturbed on appeal. (14 Cal. Jur. 151, sec. 40; *People* v. *Fowler,* 178 Cal. 657, 664 [174 Pac. 892]; *People* v. *Jim Ti,* 32 Cal. 60; *People* v. *Fredericks,* 106 Cal. 554 [39 Pac. 944].) The mere fact that a defendant was under arrest at the time of his confession will not necessarily render it incompetent as evidence, provided it appears to have been voluntarily made.

This challenged statement does not amount to a confession of guilt. It was therefore not necessary to prove that it was voluntarily made before it was entitled to be admitted as evidence.

■ The court did not err in failing to instruct the jury pursuant to section 197 of the Penal Code that:

''Homicide is also justifiable when committed by any person . . . in the lawful defense of such person or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished.''

No such instruction was offered by the defense. Even though the deceased had previously threatened to kill or poison his wife, the evidence does not indicate there was ''imminent danger of such design being accomplished''.

The defendant at no time stated that·he feared his father would kill or poison his mother. There is no evidence of demonstrations on the part of the deceased which reasonably indicate that he really intended to do so. At the time of the homicide the defendant and his father were far from their home, where the mother remained. There could have been no imminent danger of death or injury to her at the hands of the deceased. The justification for the killing of his father in lawful defense of his mother has no reasonable support in the evidence. At the trial and in his previous declaration of circumstances attending the homicide, the defendant justified the killing of his father by a persistent claim of necessary self-defense against an assault with a knife. The jury was fairly and adequately instructed regarding the principles of this defense. The following instruction was given: "The defendant has set up and introduced evidence to show that he was justified in the killing of the deceased by what is known to the law as self defense. The law of self defense is a law of necessity, and that necessity must be real or apparently real; a party acting under it may act upon appearances, and if he be justifiable in acting upon them, even though they turn out to be false, whether they were real or apparently real, is for the jury to decide upon all the circumstances out of which the necessity springs. If from all the evidence in the case the jury should find that the circumstances were such as to excite the fears of a reasonable man or woman and that the defendant, acting upon the influence of such fears, killed the deceased to prevent the commission of a felony upon his person, he would be justified in the eyes of the law."

 There was a sufficient preliminary identification of the empty cartridges and the map to admit them in evidence. The objections to this evidence are without merit.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.