JACK H. HOSKINS, appellant, v. JOHN E. BENNETT, warden, Iowa
State Penitentiary, appellee.

No. 51492.

(Reported in 131 N.W.2d 510)

NOVEMBER 17, 1964.

Jack H. Hoskins, pro se.

Evan Hultman, Attorney General, for appellee.

THOMPSON, J.—Post conviction remedies sought by those incarcerated in state prisons have become in recent years increasingly a part of litigations with which the courts must deal. The Supreme Court of the United States has by its decisions greatly broadened the scope of the due process and equal rights clauses of Amendment 14 to the Constitution of the United States, and has changed or cast doubt upon what had been previously considered settled principles of state procedures. Whether we agree with these rulings, we are bound by and must follow them. We are repeatedly faced with cases arising, or thought to arise, under various decisions of that court, and we must decide them in accordance with the law as laid down as we understand it.

The present case is before us on an appeal from a denial of a writ of habeas corpus sought by the plaintiff in the Lee District Court. He is held by the warden of the State penitentiary under four convictions in the Lyon District Court. The chronology is this: On January 5, 1958, the plaintiff shot and killed his estranged wife in the pastor's study of their church

in Rock Rapids. (It is not denied that he committed this act.) On January 8, 1958, he was charged by county attorney's information with the crime of murder. On January 24 next Don G. DeWaay, an experienced and capable attorney of Rock Rapids, was appointed to represent him. On January 26 the trial court granted an application for an examination to determine the present sanity of the plaintiff, he was sent to the Mental Health Institute at Cherokee, and a report was filed by the authorities there which cast doubt upon his sanity at the time of his examination. On March 31, April 1 and 2 the question of his sanity at the time of trial was tried before a jury in the Lyon District Court, and he was found to be insane so that he could not participate in his defense. On April 3, 1958, he was committed to the Insane Ward of the Men's Reformatory at Anamosa "until he was sane."

On May 28, 1959, he was determined to be "mentally restored" and the warden of the Reformatory notified the sheriff and county attorney of Lyon County of this finding, in accordance with section 783.4 of the Code of Iowa. He was then returned to the Lyon County jail, and the murder charge was set for trial at the October term of the Lyon District Court. The letter notifying the authorities of the plaintiff's restored sanity contained a statement that Dr. J. Stomel, the chief psychiatrist of the criminal insane ward, had found him medically and legally sane. This was read into the record at the time of the later hearing on the murder charge.

While in the jail at Rock Rapids awaiting trial, the plaintiff escaped on August 15, 1959. He was apprehended and returned to the jail on August 26 next. Two other prisoners escaped with him. As a result of this escapade, three other charges were filed against the plaintiff. These were violation of section 711.2, robbery with aggravation, based on the taking of a gun and money from the jailer's wife; violation of section 321.82, larceny of an automobile, used in fleeing from the jail; and violation of section 745.12, assisting a felon to escape, arising from the escape of other prisoners with him.

Mr. DeWaay, who at all times represented the plaintiff on the murder charge, was appointed as his counsel also on the

three new charges. Pleas of guilty were entered as to each of these, the court heard evidence as to the offenses, and sentenced the plaintiff to confinement in the State penitentiary for 25 years under section 711.2; to not to exceed 10 years under section 321.82; and to not to exceed 10 years under section 745.12; these sentences to run consecutively. He was taken to the penitentiary to begin serving these judgments.

On September 28, 1959, the plaintiff was ordered returned for trial on the murder charge. On October 1 next he withdrew his plea of "Not Guilty by reason of insanity" and entered his plea of guilty to this charge. The court proceeded to take evidence as to the degree of guilt and the proper punishment. It was at this time that the report from the warden of the reformatory showing the plaintiff restored to sanity was introduced. The court found the plaintiff guilty of murder of the second degree, and sentenced him to confinement in the State penitentiary for a term of 99 years. He is currently serving the four sentences.

I. The plaintiff assigns five errors relied upon for reversal. The first two of these raise the same question, and will be considered together. In substance, they contend that the plaintiff, having been found to be insane on March 2, 1958, the presumption of sanity ordinarily indulged was not in effect; but that a presumption of continuing insanity should have been applied, and no plea of guilty should have been received in any of the cases without another trial to determine whether he was mentally competent at that time.

No application for another examination to determine sanity was made at the time of entering any of the pleas of guilty upon which the plaintiff was convicted. But he contends for the presumption of continued insanity, which he thinks required the court to make a further investigation. But this claim fails because under the circumstances shown here the presumption of sanity was again in effect.

At this point section 783.4 becomes important. We quote so much thereof as is material: "If the accused is committed to the department for the criminal insane, as soon as he becomes mentally restored, the person in charge shall at once give notice

to the sheriff and county attorney of the proper county of such fact, and the sheriff, without delay, must receive and hold him in custody until he is brought to trial or judgment, as the case may be, or is legally discharged, * * *."

The governing rule is stated in 22A C. J. S., Criminal Law, section 584, page 348 : "* * * nor does prior confinement in a hospital or asylum raise such a presumption [of continuing insanity] where accused has been discharged therefrom as cured." In Foy v. Metropolitan Life Insurance Co., 220 Iowa 628, 632, 263 N.W. 14, 15, 16, we said: "It has been held by this and many other courts that after an adjudication of insanity such condition is presumed to continue, but if a discharge of the patient from confinement follows later, the presumption changes and there is a new presumption that sanity has returned." To the same effect is Mileham v. Montagne, 148 Iowa 476, 484, 125 N.W. 664, 667.

The department for the criminal insane at the reformatory at Anamosa is a regularly staffed mental hospital. The record shows that the warden, in notifying the Lyon County authorities under section 783.4 of the mental restoration of the plaintiff, acted within the meaning of the statute, and in accordance with the findings of the psychiatrists in the mental health department. The presumption of sanity then became effective again. Nothing in Thomas v. Purcell, 252 Iowa 177, 104 N.W.2d 823, controverts this. No suggestion was made to the sentencing court that the plaintiff was not mentally able to participate in his defense and to understand the meaning of his pleas of guilty.

II. The third assignment of error is somewhat related to the first two. By it, the plaintiff attacks the effective assistance rendered him by his counsel. He says that Mr. DeWaay should have again raised the question of his client's sanity at the time he entered each of the pleas of guilty. Mr. DeWaay said that he considered the plaintiff sane at those times. We have pointed out above that there was a presumption of restoration to sanity upon the discharge from the criminal insane department; and in the absence of further indication of a recurrence, it would have bordered on the frivolous for him to ask another inquiry. The plaintiff thinks his jail escape and the commission of the

related crimes should have alerted his counsel to a possible mental condition. Why this should be indicated rather than a vicious and criminal disposition is not clear to us.

There is an increasing tendency on the part of those accused of crimes who have been eventually laid by the heels to attempt to blame their counsel for the punishment they have received. The claim of ineffective representation is too often made without justification. The attorney for one accused of a serious crime is faced with many questions of proper procedure to protect the interests of his client. Here Mr. DeWaay had to decide what would have the better chance of securing whatever rights the present plaintiff was entitled to. The factual situation as to all four cases—the original murder charge and the three growing out of the jail escape—was grim. There was no real defense on the facts. His client had recently been returned from the hospital at Anamosa as mentally restored; a request for another trial on the question of insanity at the time of trial might well have appeared to him as one which would be regarded as frivolous. He saw no evidence of insanity then.

As to the murder charge, the plaintiff at no time, so far as the record shows, denied the commission of the act. Mr. DeWaay had provided him with a plea of Not Guilty by reason of insanity. He was then faced with the question of whether to proceed to trial, with insanity as his only real defense, or to advise a plea of Guilty and hope for some leniency from the court. Many attorneys, capable and effective, have confronted this same situation. If it seemed to Mr. DeWaay that the chance was better with the court than with the jury, who is to say that he was not acting honorably and effectively? In fact, it can well be urged that he chose wisely. The court absolved his client of guilt of murder of the first degree; and this was a victory of sorts. It removed the chance of imposition of the death penalty. The court went further, and imposed a sentence for a term of years, thus leaving the plaintiff the opportunity for a parole. Code section 247.5. The plaintiff made no protest or objection at the time; it was only after the danger of a death penalty or life sentence had been removed that he decided he had been wronged, that he did not have effective representation

of counsel. Such a charge, unsupported by the record as it is, comes with poor grace now. We are not disposed to condemn an exercise of judgment by an attorney in a difficult situation such as this.

III. The plaintiff further assigns error because the trial court held that his prosecution for murder by county attorney's information rather than by grand jury indictment did not violate his constitutional rights. This question has recently been determined adversely to plaintiff's contention in Kotek v. Bennett, 255 Iowa 984, 988, 124 N.W.2d 710, 712. Authorities are there cited.

IV. Finally the plaintiff complains that he was not furnished a transcript of the evidence taken at the habeas corpus hearing at public expense. He alleges that he is an indigent, and relies upon several United States Supreme Court opinions, including Lane v. Brown, 372 U. S. 477, 83 S. Ct. 768, 9 L. Ed.2d 892; Smith v. Bennett, 365 U. S. 708, 81 S. Ct. 895, 6 L. Ed.2d 39; Burns v. Ohio, 360 U. S. 252, 79 S. Ct. 1164, 3 L. Ed.2d 1209; and Griffin v. Illinois, 351 U. S. 12, 76 S. Ct. 585, 100 L. Ed. 891, 55 A. L. R.2d 1055. None of these goes to the exact point involved here. Some of them, as the Griffin case, deal with refusal of a transcript at public expense for the purpose of taking an appeal from the original conviction; others can be distinguished on other grounds.

But we do not find it necessary to decide whether there was a violation of the plaintiff's constitutional rights by the refusal of the Lee District Court to order a transcript of the evidence in the habeas corpus hearing. The trial court said that habeas corpus is a civil proceeding, and there is no provision in the Iowa law for a transcript of the evidence in such cases at public expense. This is true; and the question of who would pay for the transcript would be an insoluble one. This in itself, of course, might not be sufficient reason for denial of a right given by the constitution.

But this question is not before us. Error, if error is present, does not constitute a ground for reversal unless it was also prejudicial. Two considerations are present here which refute prejudice.

■ First, all of the errors assigned in the instant case present questions which could have been determined on appeal, by proper procedures. Nothing is shown which could not have been brought before this court by an appeal. In such case, the law provides for a transcript at public expense for an indigent. Code section 793.8. Habeas corpus may not be used to perform the function of a further appeal from a judgment of conviction. Kotek v. Bennett, supra, 255 Iowa 984, 987, 124 N.W.2d 710, 711, and citations. The questions on the plaintiff's sanity at the time he entered his pleas of guilty, of the effectiveness of his counsel, and of his right to prosecution by indictment rather than by county attorney's information could all have been presented on an appeal. There is no showing, as there was in Sewell v. Lainson, 244 Iowa 555, 57 N.W.2d 556, that the plaintiff was prevented from taking an appeal by threats, or in any other manner.

■ Second, habeas corpus is a law action, and the trial court's findings of fact are binding upon us if supported by substantial evidence. The plaintiff does not claim there was no evidentiary basis for the court's findings. His assertion is that the testimony of Mr. DeWaay is "likewise relevant to a question of fact; did such failure constitute denial of effective assistance?" It is likewise contended this testimony would be important on the question of sanity at the time of entering the pleas.

But, relevant or not, important or not, there was ample testimony shown in the record to support the trial court's findings and conclusions. The testimony of Mr. DeWaay, even if "relevant" and "important", would serve at most only to contradict other matters properly before the court. We must accept the findings of the trial court under the record in this case. Thomas v. Purcell, supra, loc. cit. 252 Iowa 180, 104 N.W.2d 825.

V. The contentions of the plaintiff fly in the face of our long-settled rules of procedure. We think our procedures sound, and adhere to them.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.