DENNIS STEVEN ASHBY, appellee, v. C. H. HAUGH, warden, IOWA STATE MEN'S REFORMATORY, Anamosa, appellant.

No. 52526.

(Reported in 152 N.W.2d 228)

1048 

July 11, 1967.

W. W. Reynoldson, of Osceola, and Robert H. Story, Jones County Attorney, of Anamosa, for appellant.

Robert E. Mannheimer, Norman G. Jesse and Tom W. George, all of Des Moines, for appellee.

GARFIELD, C. J.—This is a habeas corpus action against the warden of the men's state reformatory where it is alleged plaintiff is illegally restrained. Following a hearing, the district court ruled plaintiff should have been referred to the juvenile court of Ringgold County and ordered him remanded to such court within one week for further proceedings. Defendant has appealed. We reverse the decision.

On the night of October 7, 1965, an armed robbery was committed upon an attendant at a gasoline filling station in Mount Ayr, Ringgold County. About an hour later plaintiff and three companions were apprehended and taken into custody in northern Missouri, approximately 50 miles south of Mount Ayr. Plaintiff and one of the other three had entered the station and plaintiff, while masked, held the gun on the victim. Upon being apprehended and at all times subsequent thereto until about two weeks after he was admitted to the reformatory plaintiff gave his age as 19.

After plaintiff was sentenced to the reformatory on his plea of guilty to robbery with aggravation in violation of section 711.2, Code 1962, it developed he was in fact only 17. This action followed.

Relief was asked on two grounds. First, that since plaintiff was in fact under 18 it was mandatory under what is now section 232.61, Code 1966, that he be referred to the juvenile court of Ringgold County before the district court could sentence him under the county attorney's information filed against him therein. Second, that plaintiff was denied effective representation by counsel at the preliminary hearing before the justice of the peace (which hearing was waived); plaintiff was interrogated at length by the county attorney when plaintiff was without counsel, in violation of his constitutional right against self-incrimination and to due process of law; and the whole atmosphere surrounding plaintiff's conviction and sentencing was such that he was denied due process.

The trial court's ruling is based solely on the first of these two grounds. The second ground on which the action is based is ignored except as stated in Division III hereof. No attempt was made to have the court's findings enlarged or amended under

rule 179, Rules of Civil Procedure, to include reference to the second ground of the action to which virtually all the evidence was directed.

I. Two procedural questions are presented. Copy of the mittimus (legal process) by virtue of which plaintiff was restrained in the reformatory was not annexed to the petition nor was satisfactory reason given for its absence, as required by Code section 663.1, subsection 2. Based on this omission defendant unsuccessfully moved to dismiss the petition at the outset of the hearing and again at the close of plaintiff's evidence and the evidence as a whole.

We have held the requirements of section 663.1 as to what the petition must contain are mandatory and failure of compliance is ground for dismissal of the action. Farrant v. Bennett, 255 Iowa 704, 708, 123 N.W.2d 888, 891, and citations, certiorari denied 375 U. S. 977, 84 S. Ct. 498, 11 L. Ed.2d 422.

However, since the mittimus was received in evidence at the commencement of the hearing and plaintiff, by amendment to the petition dictated into the record at the close of his evidence, tendered the exhibit as part of the petition, we do not reverse because of this omission from the petition.

II. More serious is the fact plaintiff had appealed to this court from the judgment of conviction in the district court and the appeal was never dismissed. So far as the record before us shows, it was still pending at the time of the hearing on plaintiff's petition although plaintiff's attorneys said it was their intention to abandon it.

"* * * a court has no power to grant a writ of habeas corpus pending an appeal to another court from a conviction in a criminal prosecution." 25 Am. Jur., Habeas Corpus, section 108, page 223.

To like effect is 39 C. J. S., Habeas Corpus, section 53, page 596, which states the rule is of wide application and there is no conflict of authorities on it.

Peff v. Doolittle, 235 Iowa 443, 447, 15 N.W.2d 913, 915, quotes both 25 Am. Jur. and 39 C. J. S., supra, with approval and cites many decisions supporting the rule. See also McFarland v. State, 172 Neb. 251, 109 N.W.2d 397, 402, and cita-

tions; Rhodes v. Sigler, 172 Neb. 439, 109 N.W.2d 731, 733; France v. Superior Court, 201 Cal. 122, 255 P. 815, 52 A. L. R. 869, and annotation, 876.

Although defendant's motion to dismiss on this ground was good, we prefer not to rest our decision on this somewhat technical ground.

III. As stated, sole basis of the relief granted was the trial court's opinion that what is now section 232.61, Code 1966, is mandatory and required the justice of the peace to initially refer plaintiff to the juvenile court of Ringgold County; since this was not done his detention in the reformatory was illegal. Other issues were ignored except as stated in the next paragraph hereof. The ruling (filed the day the evidence was concluded and the case argued) makes no mention of section 232.62, infra.

The ruling states four times, in effect, that the fact plaintiff was not treated as a juvenile was of his own making in wilfully falsifying his age and that his true age was not discovered until after he was sentenced in district court. Also that "the juvenile court may choose to review the other matters raised in this action." This must refer to defendant's contention that in consciously misrepresenting his age plaintiff waived any alleged right to have his case initially considered by the juvenile court and plaintiff's claim he was denied effective representation of counsel and in other ways deprived of due process.

We know of no authority, statutory or otherwise, to support the view that the juvenile court could properly and effectively review such other matters.

The court's decision is contrary to our holding in State v. Stueve, 260 Iowa 1023, 150 N.W.2d 597, filed about nine months after the decision here. It must be assumed the decision would not have been rendered if our Stueve opinion had been filed before the trial court acted.

Although the cited case is conclusive against plaintiff on the first ground of his action, it is perhaps well to quote sections 232.61 and 232.62, Code 1966. The former provides:

"Mandatory transfer from justice court. Any child taken before any justice of the peace or police court charged with a public offense shall, together with the case, be at once trans-

ferred by said court to the juvenile court."

Section 232.62 states:

"Concurrent jurisdiction of criminal offenses. The criminal court shall have concurrent jurisdiction with the juvenile court over children less than eighteen years of age who commit a criminal offense."

Although 17-year-old Stueve was not taken before a justice of the peace as plaintiff Ashby was here, our Stueve opinion fully disposes of the contention made here that section 232.61 places initial jurisdiction of any juvenile offender exclusively in the juvenile court. After summarizing this statute, we hold "this does not mean the juvenile court must try the case, nor that this procedure is exclusive." The cited opinion then refers to section 232.3 and, particularly, to 232.17, quoted in full in the dissenting opinion in Stueve. Our opinion proceeds:

"Appellant contends these sections disclose an intent that all juveniles under the age of 18 years must be first sent to juvenile court, and it is then to decide in its discretion whether it will exercise juvenile jurisdiction or send the child and the case to the district court for criminal action. * * * we think appellant claims too much for these procedural sections and fails to give the expression 'concurrent jurisdiction' in section 232.62 the clear and judicially express meaning of the term as used therein." (Page 1030 of 260 Iowa, page 601 of 150 N.W.2d.)

The argument for plaintiff here closely parallels the views expressed in the Stueve dissent and takes issue with the conclusion reached in the opinion of November 2, 1965, of the Iowa Attorney General. That opinion points out that if the "concurrent jurisdiction" referred to in 232.62 may be exercised only after the juvenile court determines the child shall be referred to the criminal court for prosecution then the section was totally unnecessary because section 232.17 contains such a provision.

Plaintiff asserts in argument and we agree the legislature could not have intended the mere circumstance of whether a child is brought before a justice of the peace should determine whether he is to be treated as a juvenile in further proceedings.

We conclude the fact this plaintiff was taken before the J. P. initially and Stueve was not affords insufficient basis for

distinguishing the Stueve opinion as a controlling precedent here. We reiterate our holding there that section 232.62 means what it says.

IV. As previously indicated, the trial court found as facts plaintiff consistently and wilfully falsified his age to the officials and led them to believe he was 19 when he was in fact 17 and, prior to sentencing, the district court was not aware he was under 18. There is ample evidence to support these findings and they are therefore binding on us. Birk v. Bennett, 258 Iowa 1016, 141 N.W.2d 576, 577, 578 (Thornton, J.) ; Scalf v. Bennett, 260 Iowa 393, 147 N.W.2d 860, 863; Hansen v. Haugh, 260 Iowa 236, 149 N.W.2d 169, 171, 172, and citations in these opinions.

Defendant contended in the trial court and argues here that by misrepresenting his age plaintiff waived any alleged right to have his case initially determined by the juvenile court. As stated, the trial court ignored the contention. We must disagree with plaintiff's repeated assertion in argument here that the court held plaintiff was powerless to waive the alleged right.

In view of our determination in the preceding division (III) that plaintiff did not have the right he claimed to have had, a decision on this question of waiver is not required. We may observe, however, that a number of authorities support defendant's contention, including People v. Luzovich, 127 Cal. App. 465, 16 P.2d 144, citing People v. Oxnam, 170 Cal. 211, 149 P. 165; Ex parte Bastiani, 81 Cal. App. 294, 253 P. 951; Harris v. Alvis, 61 Ohio L. Abs. 311, 104 N.E.2d 182; State v. Klingenberger, 113 Ohio St. 418, 149 N.E. 395, 396; Valdez v. State, 98 Tex. Cr. 166, 265 S.W. 161; Fifer v. State, 90 Tex. Cr. 282, 234 S.W. 409, 410. See also Carpentier v. Lainson, 248 Iowa 1275, 1284, 84 N.W.2d 32, 37, 71 A. L. R.2d 1151; 31 Am. Jur., Juvenile Courts, etc., section 34; 43 C. J. S., Infants, section 98b(1), pages 233, 234.

Squarely in point is In re Evans, 67 Ohio App. 66, 35 N.E.2d 887. We quote the first syllabus:

"A writ of habeas corpus would not be granted for release from state reformatory of minor who, upon being arrested and taken before the municipal court, gave his age as 19 years when in fact he was but 17 years of age, and who thereafter was in-

dicted, pleaded guilty, and was convicted in the common pleas court on a criminal charge without proceedings of any kind having been held before the juvenile court of the county."

This quotation is repeated in Harris v. Alvis, supra, 61 Ohio L. Abs. 311, 104 N.E.2d 182.

Plaintiff has cited on this point Ex parte Albiniano, 62 R. I. 429, 6 A.2d 554, 123 A. L. R. 441, and Ex parte Pyzer, 29 Okla. Cr. 156, 232 P. 962. In neither case was any misrepresentation made as to the minor's age as there was here—no question was raised concerning it when arraigned. In addition, in the Pyzer case the minor was under 16, not represented by parent or counsel at the sentencing and did not know or fully comprehend the import of the accusation or the consequences of her plea of guilty.

V. Plaintiff seeks to uphold the trial court's decision by renewing the contention he was denied effective representation by counsel and in other ways deprived of due process in Ringgold County.

Although the trial court ignored this contention, plaintiff is entitled, without appealing, to urge it here in support of the decision. Wentland v. Stewart, 236 Iowa 258, 261, 18 N.W.2d 305, 306, and citations; Jacobson v. Aldrich, 246 Iowa 1160, 1163, 68 N.W.2d 733, 735.

VI. Lack of effective representation by counsel may constitute a jurisdictional defect reviewable by habeas corpus. Scalf v. Bennett, supra, 260 Iowa 393, 147 N.W.2d 860, 864, and citations; State v. Wesson, 260 Iowa 331, 149 N.W.2d 190, 195.

Birk v. Bennett, supra, 258 Iowa 1016, 1019, 141 N.W.2d 576, 578, cited by plaintiff, contains this:

"Plaintiff is entitled to effective assistance of counsel. [citations] 'Effective' does not mean successful. But it does mean conscientious, meaningful representation wherein the accused is advised of his rights, not merely a perfunctory appearance by counsel. [citation]

" 'Only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court, can a charge of inadequate legal representation pre-

vail.' [citations] The burden of proof on these matters is on the plaintiff." [citation]

The views expressed in Birk v. Bennett are reiterated in Scalf v. Bennett and State v. Wesson, both supra, which also point out it is presumed court-appointed counsel for an indigent defendant acts properly. The Scalf opinion cites many additional authorities for what is said.

"Neither a plea of guilty nor a conviction by a jury proves inadequacy of counsel. The fact that appellant is in prison does not indicate (he) was inadequately or improperly represented or badly advised." Nelson v. Bennett, 255 Iowa 773, 777, 123 N.W.2d 864, 866.

"There is an increasing tendency on the part of those accused of crimes * * * to attempt to blame their counsel for the punishment they have received. The claim of ineffective representation is too often made without justification." Hoskins v. Bennett, 256 Iowa 1370, 1375, 131 N.W.2d 510, 513.

The attorney appointed to represent plaintiff and his three accomplices (ages about 21, 23 and 25) was Grant L. Hayes of Mount Ayr, a graduate of the College of Law of the University of Iowa, with 49 years experience in the practice. He had served 34 years as the elected county attorney of Ringgold County, prosecuting those charged with crime. When not county attorney he defended those so charged.

Ringgold County has the second smallest population—7910 —of any of the state's 99 counties. Mount Ayr, the county seat (population 1738) is the only town in the county with an attorney. Aside from Mr. Hayes and the county attorney at the time plaintiff was sentenced there were only two other attorneys. It would seem Mr. Hayes was well qualified by training and experience to serve plaintiff and his associates.

VII. Because of the assertion of counsel now appearing for plaintiff that Mr. Hayes' representation of him was "a farce and mockery of justice" and that in this respect and others plaintiff was denied due process, further reference to the evidence seems desirable.

As stated at the outset, plaintiff and his three companions were apprehended in Missouri about an hour after the armed

robbery at Mount Ayr in which plaintiff and one of the others, both masked, entered the filling station and extracted the money from the attendant at the point of a gun held by plaintiff. Plaintiff's hair was then of a different color from that at the time of the habeas corpus hearing and he then had a goatee. About an hour later the sheriff, his deputy and a highway patrolman arrived in Missouri from Mount Ayr with the victim of the robbery who identified the four persons in custody, the gun used in the robbery and the money obtained.

Soon after they were apprehended plaintiff outwitted the officers by asking to use the toilet and when the request was granted he flushed down the stool the mask he wore in the holdup.

There is ample evidence plaintiff and his associates were fully informed in Missouri of pertinent constitutional rights to remain silent and have the assistance of counsel which they declined. The evidence indicates plaintiff was already fully aware of these rights. (The petition in habeas corpus does not assert denial of due process in Missouri.)

On the following day the four young men signed waivers of extradition to Iowa after being told they were to be charged with robbery with aggravation here, knowledge of the penalty therefor (which plaintiff admitted he already knew) and that the waivers meant they would be returned to Iowa, and also after discussion among the four whether to return voluntarily to Iowa. Before these waivers were signed, the county attorney at Mount Ayr was told by the Missouri officers over the phone the four would waive extradition if they could be assured a judge would be at Mount Ayr to take their plea on Saturday. On the strength of this call the attorney prepared county attorney's informations charging each of the four with the crime to which each pleaded guilty before an experienced district judge the following day.

About midafternoon the four were arraigned before a justice of the peace in Mount Ayr who read the charge against them. They were informed of their right to counsel and that counsel would be provided if they were unable to pay therefor. After conferring among themselves they again declined assist-

ance of counsel, waived preliminary hearing and each pleaded not guilty.

Plaintiff testified that after the appearance in J. P. court the four were interrogated by the county attorney from ½ to 1½ hours. However, the clear weight of the evidence is that those in custody told the sheriff they wanted to talk to the county attorney; when the attorney responded to the request he told them he could or should not talk to them; plaintiff or one of the others said they wanted to know just one thing—"How much time can we get on this?"; the attorney replied the maximum under the statute was 25 years; the county attorney suggested they call their families about the trouble they were in but did not interrogate any of them concerning the crime; the conversation took perhaps five minutes. (The petition alleges the county attorney interrogated plaintiff at length.)

After this talk with the county attorney the four persons made phone calls that were not monitored and soon thereafter were taken to a restaurant where prisoners were usually fed, for whatever evening meal they cared to order. The sheriff locked them up for the night about 6:30 and they were not called until 7 a.m.

■ VIII. In view of the claims of violation of constitutional rights now asserted we have reviewed the evidence as to what happened through the day before the hearing in district court. We find no denial of any constitutional right. It must be remembered, however, no preliminary hearing was necessary. This conviction is based on a plea of guilty to the county attorney's information which was in lieu of preliminary hearing and subsequent grand jury action. Chapter 769, Code 1962; State v. Clark, 258 Iowa 254, 138 N.W.2d 120, 122; State v. Kulish, 260 Iowa 138, 148 N.W.2d 428, 432.

Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799, 93 A. L. R.2d 733; Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977, and other federal decisions cited have been considered. We do not find them applicable. Plaintiff's conviction is not based on evidence illegally obtained by illegal search and seizure, admissions, con-

fessions or otherwise. As stated, the conviction is based on a plea of guilty in open court after appointment of and consultation with an experienced attorney and without illegal coercion or duress of any kind. See State v. Clark and State v. Kulish, both supra, citing 21 Am. Jur.2d, Criminal Law, section 495, page 483.

■ IX. Further consideration of Mr. Hayes' representation of plaintiff and what happened in district court remains.

The county attorney asked Mr. Hayes late Friday afternoon or evening if he would represent these four persons in court and he consented to do so if they so desired. Mr. Hayes went to the sheriff's office the following morning and conferred alone with the four under arrest. Mr. Hayes testified the conference lasted about a half hour and this is corroborated by other evidence. Plaintiff did not think the time exceeded "roughly 15 minutes."

Plaintiff admits Mr. Hayes told him and he fully understood the four were charged with robbery with aggravation; what the difference was between that and "plain robbery"; the statutory penalty for the crime charged; he (Hayes) would try for a bench parole for plaintiff but did not think he could get it because of his prior record; he thought plaintiff would get the maximum.

Mr. Hayes testified without contradition he first told the four who he was and that the court might appoint him for them if they were willing; he asked their names, their homes (all were from Des Moines), their ages, whether they were familiar with the charges (they said they were) and with court procedure (they said they were, more or less), how they wanted to plead (all said they wanted to plead guilty), whether they realized they could get 25 years under such a plea and the penalty would be the same as if they contested the case (all said they so understood); he (Hayes) was trying to get away from trial work and "wouldn't" they like to have some Des Moines attorney, one they knew, or some organization in Des Moines that represents cases of this kind; they said "No"; Hayes asked if anyone had made them any promises or if any threats had been made (they said "No"); he told them if they were without the money the county would appoint an attorney to try their case for them; he asked

if they still wanted to plead guilty (they said "Yes") ; he would represent them if that is what they wanted; he asked if they were guilty (they said they were) ; he did not think the judge would give them a bench parole under the circumstances.

Mr. Hayes further testified the four said they were not interested in standing trial or having an attorney who would try the case for them; they did not want another attorney and wanted to plead guilty. Plaintiff admits this. None of the four suggested there was any excuse or mitigating circumstance for the crime they committed.

After conferring with the four young men and before going into the courtroom Mr. Hayes talked to the judge in their behalf and asked him about a parole but the judge shook his head.

Plaintiff testified his father told him the maximum for armed robbery was 25 years "before I stuck up the service station." Also "I don't claim that during the time I was in custody of any Iowa officer I was misused. They treated me fair." Further that he made no objection to the judge or anyone else regarding the attorney who was representing him.

A transcript of the hearing in district court, at which plaintiff and his three accomplices each personally pleaded guilty, waived the time granted by Code section 789.2 for pronouncing sentence and was sentenced, was offered in evidence by plaintiff and is before us.

The formal appointment of Mr. Hayes as attorney for plaintiff was not made until the hearing as to him commenced and after he informed the court he had no attorney. Plaintiff informed the court he had talked with Mr. Hayes, at preliminary hearing he had been informed of his right to counsel, a copy of the county attorney's information charging him with robbery with aggravation had been delivered to him.

Told the county attorney would read the information to him if he wished, plaintiff replied he did not wish to have it read, waived the reading of it and understood he was charged with robbery with aggravation. Told he could take two days to enter a plea (see Code section 775.11) plaintiff said he would like to enter it then, he entered an oral plea of guilty to the crime charged and a written plea of guilty, witnessed by two witnesses,

was also presented to the court. At the judge's suggestion, plaintiff appeared to read the written plea, said he signed it and understood he was thereby pleading guilty to robbery with aggravation. See in connection with this written plea State v. Gruver, 260 Iowa 131, 148 N.W.2d 405, 407. Told he was entitled to three days before sentence was passed plaintiff replied he would waive time and sentence was then pronounced.

Section 789.2 provides in effect sentence may be pronounced in less than three days after the plea of guilty is entered if defendant consent thereto. Here plaintiff not only consented that sentence be pronounced on that day but, it may fairly be inferred, was anxious to have it done. He testified he was rather anxious to start serving his time as soon as possible and wished to be taken to the reformatory on the following Monday (two days after entry of his plea) and not be delayed until Tuesday.

Perhaps it would have been better if sentence had not been pronounced until a later date but the fact there was no delay, under the circumstances here, is not a denial of due process of law or ground for relief in habeas corpus. State v. Kohl, 260 Iowa 308, 149 N.W.2d 198, 200; State v. Hurd, 260 Iowa 184, 147 N.W.2d 895; State v. Clark, supra, 258 Iowa 254, 138 N.W.2d 120, 123; Bennett v. Bradley, 216 Iowa 1267, 1269, 249 N.W. 651. The first three of these precedents were direct appeals, the fourth was certiorari to review revocation of a bench parole. None was a collateral attack by habeas corpus, as here, upon a judgment of conviction.

We will add the trial court had before him at the hearing in Mount Ayr plaintiff's record furnished by the state bureau of investigation. It and the testimony of plaintiff's father at the hearing in habeas corpus reveal plaintiff was sent to the state training school for boys at Eldora in 1962; he was paroled from there, later convicted of larceny and returned to Eldora, again paroled and returned for parole violation.

At these hearings plaintiff's father accompanied him to juvenile court. The father testified he then "tried to tell this boy he was headed for trouble." It is regrettable plaintiff did not heed the warning.

With instructions to dismiss the petition, return plaintiff to defendant's custody and tax the costs to plaintiff (see section 663.44) the ruling is—Reversed and remanded.

All JUSTICES concur except BECKER, J., who dissents.