STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN VAN BUREN, DEFENDANT-APPELLANT.

Argued February 17, 1959—Decided April 20, 1959.

550

*Mr. Victor R. King* argued the cause for appellant (*Messrs. Victor R. King* and *Robert T. Hueston,* attorneys).

*Mr. Cuddie E. Davidson, Jr.,* Special Assistant Counsel, argued the cause for respondent (*Mr. H. Douglas Stine,* County Prosecutor, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J.   Defendant was charged with murder arising out of a holdup of a food market in which his role allegedly consisted of operating the get-away car.   Defendant being 17 years of age, the complaint came before the Juvenile and Domestic Relations Court of Union County. The court decided to relinquish jurisdiction and referred the matter to the county prosecutor.   The grand jury then returned an indictment for murder.   Assigned counsel thereafter appealed from the order of transfer and apparently also asked the juvenile court for a rehearing.   The juvenile court indicated its desire to hold a further hearing and to that end we granted an application to remand the cause prior to our consideration of it.   Upon the further hearing, the juvenile court reaffirmed its action, and the validity of its order is now before us.

*N. J. S.* 2A:4-14 provides that, except as stated in 2A:4-15, the Juvenile and Domestic Relations Court shall have exclusive jurisdiction of all cases of juvenile delinquency. Juvenile delinquency is there defined to include the commission by a child under 18 years of age of any act which when committed by a person of the age of 18 years or over would constitute a "felony, high misdemeanor, misdemeanor, or other offense."   The crime of murder is included.   *State v. Monahan,* 15 *N. J.* 34 (1954).   The exception to the court's exclusive jurisdiction appears in *N. J. S.* 2A:4-15, which reads:

"If it shall appear to the satisfaction of the juvenile and domestic relations court that a case of juvenile delinquency as defined in section 2A:4-14 of this title committed by any juvenile of the age of 16 or 17 years, should not be dealt with by the court, either because of the fact that the person is an habitual offender, or has been charged with an offense of a heinous nature, under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society, then the court may refer such case to the county prosecutor of the county wherein the court is situate.

Any juvenile of the age of 16 or 17 years may demand a presentment and trial by jury and, in such case, when this fact is made

known to the court, such case, together with all documents pertaining thereto, shall be referred to the county prosecutor.

Cases so referred to the county prosecutor shall thereafter be dealt with in exactly the same manner as a criminal case."

The action here complained of was taken under that section.

Defendant urges (1) the statute, or at least an implementing rule of court to which we will later refer, contemplates the same type of preliminary hearing provided for persons charged with crime, *i. e.,* to determine the existence of probable cause to bind an accused over to await final determination; (2) the juvenile court is required to exhaust all avenues of investigation to determine whether defendant is incorrigible, apparently on the thesis that a reference to the prosecutor may not be made unless it is first found that the juvenile is beyond rehabilitation under the·Juvenile Delinquency Act; and (3) the court abused its discretion under the circumstances of this case.

The history of the treatment of juvenile delinquency in this State appears in *Monahan, supra* (15 *N. J.* 34). There is no doubt that insofar as conduct is treated as delinquency the approach is protective and rehabilitative rather than punitive. But, as *Monahan* reveals, there has not been universal agreement as to what acts should be so handled. In some jurisdictions murder is excluded, Annotation, 48 *A. L. R.* 2*d* 663 (1956), and it was judicially held in this State, prior to *Monahan,* that it was beyond the legislative power to include homicide within juvenile delinquency whatever the age of the offender.

So also, as to offenses generally, disagreement has been evident with respect to the age which should mark the jurisdictional limit of the juvenile court. In our State the jurisdiction of that court was enlarged in 1943 to include juveniles of the ages 16 and 17, but upon an intermediate approach under which an offense could be dealt with either as a crime or as juvenile delinquency. Chapter 97 of the laws of that year placed the power for the initial decision in (1) the grand jury with the approval of the prosecutor,

or (2) the prosecutor, or (3) the then courts of criminal jurisdiction. No standard was expressed for the decision to refer the complaint to the juvenile court. The sole prerequisite was a report by the chief probation officer. The juvenile court was authorized to return the matter for criminal prosecution (1) "at any time before final adjudication * * * if, in its judgment upon the facts disclosed at the hearing, the complaint should not be adjudicated in the juvenile and domestic relations court," or (2) if "the probationer shall violate any of the conditions of his probation."

In 1946 the act was amended to embody the provisions set forth in *N. J. S.* 2*A* :4–15, quoted above, whereby the juvenile court was given the sole authority to determine on behalf of the State whether the juvenile delinquency or the criminal process shall be invoked as to juveniles of the ages 16 and 17.

██ In considering whether a hearing is required and if so its nature, it is necessary to keep in mind what is and is not determined when the juvenile court decides to refer the matter. It is clear that the court does not pass upon guilt of crime or upon the existence of delinquency. Rather the question is whether the cause shall be prosecuted under the criminal statute or under the Juvenile Delinquency Act. A finding of juvenile delinquency upon the basis of the conduct charged is neither required nor authorized. What must appear "to the satisfaction" of the juvenile court is that the person is "an habitual offender" or "has been *charged* with an offense of a heinous nature, under circumstances which *may* require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society" (*emphasis added*). A decision to refer the complaint to the prosecutor is not a *disposition* of the complaint. Thus, the decision to relinquish jurisdiction is not included in *N. J. S.* 2*A* :4–37 or *R. R.* 6 :9–11 in the specification of the dispositions the juvenile court may make of a child upon a finding of delinquency. And of course it is evident that under the 1943 act which placed the initial

jurisdictional decision in the discretion of the grand jury with the approval of the prosecutor or in the prosecutor alone, neither the grand jury nor the prosecutor adjudicated guilt. The 1946 amendment did not depart from that approach.

Both the 1943 statute and the 1946 amendment relate to a familiar function of the State—the preliminary decision whether to proceed against an offender and, if so, under which statute if more than one may apply. In the ordinary situation that decision is left to the sound discretion of the county prosecutor as the State's representative in such matters. See *United States v. Thompson,* 251 *U. S.* 407, 40 *S. Ct.* 289, 64 *L. Ed.* 333 (1919); *Goldberg v. Hoffman,* 225 *F. 2d* 463 *(7 Cir.* 1955); *District of Columbia v. Buckley,* 75 *U. S. App. D. C.* 301, 128 *F. 2d* 17 *(Ct. App. D. C.* 1942), *certiorari* denied 317 *U. S.* 658, 63 *S. Ct.* 57, 87 *L. Ed.* 529 (1942). In the nature of things, legislation cannot anticipate all factual patterns and hence someone must be empowered on behalf of the State to decide when and in what manner its interests are best served. Here the Legislature authorized the juvenile court to make that preliminary decision, doubtless because of its specialization in this area, its familiarity with specific offenders and a greater likelihood of uniformity in the handling of juveniles.

A prosecutor's decision to act and his choice of a public remedy are *ex parte* determinations. It could hardly be suggested that he must hold a hearing on notice before he decides to move or how to proceed. And surely the 1943 statute did not contemplate that either the grand jury or the prosecutor should hold such a hearing before deciding to refer a cause to the juvenile court. But although the juvenile court's decision under the 1946 amendment remains akin to the exercise of a prosecutor's discretion, yet it need not follow that there be no opportunity whatever to be heard. The decision to retain or to relinquish jurisdiction is obviously meaningful to an alleged offender as well as to society, and hence, whatever may be thought of the demands of due process in this situation, fairness to both suggests that there be a hearing to aid the court in reaching a

decision. At the same time, the hearing must be limited to one appropriate to the preliminary nature of the question and the criteria for decision which the juvenile court is required to observe.

Defendant appears to contend that the ultimate test is whether the juvenile can be rehabilitated under the provisions of the Juvenile Delinquency Act. Some states have legislated that standard. See *Ex parte State ex rel. Echols,* 245 *Ala.* 353, 17 *So.* 2d 449 (*Sup. Ct.* 1944); *Knight v. Superior Court of Tehama County,* 102 *Cal. App.* 2d 211, 227 *P.* 2d 62 (*D. Ct. App.* 1951); *State ex rel. Boyd v. Rutledge,* 321 *Mo.* 1090, 13 *S. W.* 2d 1061 (*Sup. Ct.* 1929); *State ex rel. Norfleet v. Swafford,* 184 *Tenn.* 340, 198 *S. W.* 2d 1007 (*Sup. Ct.* 1947). But that is not the only conceivable approach. *Cf. State v. Doyal,* 59 *N. M.* 454, 286 *P.* 2d 306 (*Sup. Ct.* 1955). For example, section 10 of the Standard Juvenile Court Act (revision of 1949) prepared by a committee of the National Probation and Parole Association authorizes, as to a juvenile age 16 or over, a transfer of the cause if the offense would amount to a felony in the case of an adult, and "if the court after full investigation deems it contrary to the best interest of such child *or of the public* to retain jurisdiction" (emphasis added). The comment to the section reads in part:

"Provision for transfer of cases to a criminal court, in the discretion of the juvenile court, exists in the laws of most states. Inclusion of such provision seems to allay the apprehensions of some who would otherwise insist that the age limit be made lower * * *."

Thus the standard act recognizes that a transfer may be made to serve the best interests "of the public" notwithstanding that the interests of the juvenile, if considered alone, might suggest retention of jurisdiction. Although the history of our 1946 amendment furnishes no light, we think a like thesis is suggested in the statement appended to the bill which became the 1943 law:

"This act is intended to save from the status of a convicted criminal boys and girls between the ages of sixteen and eighteen and from all of the penalties and legal disabilities which flow from

such a status. This procedure is in accordance with recent studies which indicate the need for more discriminatory treatment of adolescent offenders *where the circumstances are not of such a serious character as to require the usual criminal proceeding.* It provides for flexibility and discrimination in the handling of certain of such offenders without the necessity of creating new courts." (*Emphasis added*)

■ At any rate, if our Legislature had intended that capacity for rehabilitation under the Juvenile Delinquency Act be the sole criterion, it would have so stated in such simple terms. Rather it specified incorrigibility as one basis for transfer, that is, in its reference to "habitual offenders," and then added a distinct, alternative ground, to wit, if the juvenile "has been charged with an offense of a heinous nature, under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter for the welfare of society." Thus a case may be referred to the prosecutor when the circumstances indicate that, if the charge is ultimately established, society would be better served by the criminal process by reason of the greater security which may be achieved or the deterring effect which that process is thought to accomplish.

■ It is apparent from the preliminary nature of the jurisdictional decision and the many combinations of circumstances which may bear upon "the welfare of society" that the range of the hearing which is appropriate will vary. The scope and detail of the hearing must be left to the sound discretion of the juvenile court. It must be kept in mind that there is no contested issue in the ordinary sense. Rather, the broad objective of the hearing is to enable the court to discharge its responsibility as the representative of the state. To that end it should afford the juvenile an opportunity to be heard with respect to the facts which the court has received from the sources available to it and upon which it is inclined to relinquish jurisdiction. Thus, if the basic question is whether the juvenile is "an habitual offender," the court should inform the juvenile of the information revealed by its investigation, to the end that he may admit or deny it. If there is a denial, the court may

wish proof if the area of dispute is critical. If the cardinal circumstance is a charge of a heinous offense, the court should reveal to the juvenile the charge as made by the State. The truth of the charge is not in issue; the question of fact is merely the existence of the charge. If the charge is murder, no more need appear to satisfy the court that the nature of the offense is heinous. See *State v. Vaszorich,* 13 *N. J.* 99, 110 (1953), *certiorari* denied 346 *U. S.* 900, 74 *S. Ct.* 219, 98 *L. Ed.* 400 (1953); *State v. Monahan, supra* (15 *N. J.,* at *page* 46). If a crime other than murder is involved, the court may wish a more detailed account of the circumstances as the State claims them to be, to the end that it may determine whether the offense as alleged is heinous. The heinous nature of the charge may be such, as for example murder, that the court may in its discretion conclude that it needs no more for a decision. In other situations the court may want the full story of the juvenile's background and makeup. In all cases it should permit the juvenile to advance such relevant facts (apart from the issue of guilt) as he may wish to place before it. It is difficult, and unwise as well, to attempt to delineate the scope of the hearing beyond these general observations. See *Macon v. Holloway,* 19 *Ala. App.* 234, 96 *So.* 933 (*Ct. App.* 1923); *Hall v. Commonwealth,* 231 *Ky.* 473, 21 *S. W. 2d* 799 (*Ct. App.* 1929); *U. S. v. Madsen,* 148 *F. Supp.* 625 (*D. C. Alaska* 1957).

In the present case testimony was offered with respect to the commission of the crime and defendant's role therein, with cross-examination by counsel for defendant. Such proof was unnecessary, since as stated above the court was concerned with the existence of the charge and not its truth. The court was satisfied, as in its discretion it could be, that the nature of the charge itself sufficed to require a reference to the prosecutor. It however permitted defendant to offer whatever he wished. It included his version of the alleged offense, his economic and social background, his work record, and the views of his employer and spiritual adviser. Defendant complains that the court refused to

order a psychiatric study. It was not then nor is it now suggested that defendant suffers from any mental infirmity. Rather, counsel for defendant was of the view that the juvenile court is bound to order an investigation of that type to ascertain what, if anything, it might reveal. We of course do not suggest that a defense of insanity as such may be tendered the juvenile court on this preliminary inquiry. We mention this aspect of the proceeding merely because of defendant's emphasis upon the court's refusal to order an examination. There is nothing to indicate the study would aid the court, and hence the refusal to order one was within its sound discretion. We think the hearing afforded was fair and appropriate in the circumstances. Nor can we say the court misused its discretion in deciding to refer the matter.

■ Defendant's criticism of the hearing and of the court's decision to refer the matter rests primarily upon the misconception that the court was required to sit as a committing magistrate upon a criminal charge under *R. R.* 3:2–3 and hence had to find there was probable cause to believe that an offense was committed and that defendant committed it. The statute distinctly separates the jurisdictional decision from the criminal procedure. It provides that "Cases so referred to the county prosecutor shall thereafter be dealt with in exactly the same manner as a criminal case." It is at that juncture that the cited rule would come into play. Defendant nonetheless urges that *R. R.* 6:9–7 requires the finding. The rule reads:

"The judge may at any time before final disposition refer the entire cause to the prosecutor of the county for criminal prosecution where the juvenile is over the age of 16 years, and is an habitual offender or the offense charged is of such a heinous nature that for the protection of society the matter should be handled as an adult criminal offense. *The hearing before this court shall then be construed as preliminary in nature to determine the course to be followed.* Any admissions by the offender shall not be held against him in any criminal proceeding that may follow such referral to the prosecutor. The judge may hold to bail or parole in the custody of the chief probation officer pending grand jury action."

Defendant stresses the sentence we have italicized. The rule, of course, was not intended to alter the statute. Rather, the purpose was to implement it. The rule took cognizance of the fact that a reference might be ordered during the actual hearing of a delinquency issue by reason of facts there revealed and hence it declared that in such circumstances the hearing "shall then be construed as preliminary in nature to determine the course to be followed," meaning thereby that it shall cease to be a hearing addressed to the final disposition of the complaint and that what has transpired shall be deemed to have related solely to the jurisdictional decision.

The rule does add that "the judge may hold to bail or parole in the custody of the chief probation officer pending grand jury action." The purpose of that provision is not to suggest that the preliminary inquiry under *N. J. S.* 2A:4-15 is the same as the preliminary hearing required to be accorded to persons charged with crime under *R. R.* 3:2-3. Rather the purpose was to authorize the court, after it decided to refer the matter to the prosecutor, to sit as a committing magistrate as in the case of adult offenders before that court. *R. R.* 6:4-2(e). At no time was a hearing for that purpose requested or undertaken before the juvenile court. In fact, prior to the further hearing defendant had been indicted and hence the matter had progressed, so far as the criminal procedure is concerned, beyond the complaint stage. At any rate, defendant does not complain that he was denied the preliminary hearing to which one charged with crime is entitled; rather his effort is to establish that the statutory inquiry as to retention of jurisdiction requires that probable cause be found, and this, as we have stated, misconceives the nature of the inquiry.

The order referring the complaint to the prosecutor is accordingly affirmed. No costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS and PROCTOR—5.

*For reversal*—None.