**STATE of Iowa, Appellant,**

**v.**

**Marcus Richard HALVERSON, Appellee.**

**No. 54273.**

Supreme Court of Iowa.

Dec. 15, 1971.

Review Denied Jan. 22, 1972.

Richard C. Turner, Atty. Gen., James W. Hughes, Asst. Atty. Gen., and Harold H. Pahlas, Clayton County Atty., for appellant.

Klauer, Stapleton, Ernst, Sprengelmeyer & Schrup, Dubuque, for appellee.

UHLENHOPP, Justice.

The determinative issue in this appeal is whether a separate hearing is required on the question of transferring an alleged juvenile delinquent from juvenile court to criminal court. See Code, 1971, § 232.72.

On August 24, 1969, fires occurred in two school buildings in Elkader, Iowa. On August 29, 1969, the county attorney of Clayton County filed a petition in juvenile court against Marcus Richard Halverson, alleging in pertinent part:

That the above named child is sixteen years of age, resides at Elkader, Clayton County, Iowa, and is a delinquent child within the statutes of the State of Iowa, to wit:

1. That on the 24th day of August, 1969, he did commit the crime of arson by setting fire to two (2) school buildings in the town of Elkader, Clayton

County, Iowa, to feloniously burn the same, this being contrary to the law as provided in Chapter 707.2 of the 1966 Code of Iowa, as amended.

On January 8, 1970, hearing commenced on the petition in juvenile court (Oberhausen, J.). Before testimony began, the court asked the county attorney if he anticipated instituting the matter in district court should the juvenile court not retain jurisdiction. The county attorney answered affirmatively.

Thereafter, however, the court announced:

The Court: Before we hear the first witness, it is the court's view that this is a regular hearing on a petition charging delinquency and at this time the State and the juvenile may present any or all relevant evidence concerning the question of delinquency and as to whether the court should or will make a finding of delinquency.

A full-blown juvenile hearing on the merits followed. The court heard 17 witnesses, mainly regarding the fires and the claimed connection of Marcus with them. The court also examined 29 exhibits. In addition, the court heard a psychiatric evaluation of Marcus and received a written report of social investigation.

On January 30, 1970, the court entered its judgment finding that Marcus would not benefit from juvenile court facilities but that the evidence was sufficient to warrant a criminal charge. The judgment stated:

It is, therefore, ordered by the court that the petition herein be and the same is hereby dismissed, and that the matter of the alleged violation of the criminal law forming the basis for the petition be and the same is hereby referred to the Clayton County Attorney for proper action under criminal law.

On February 26, 1970, the Clayton County grand jury indicted Marcus for arson.

Marcus pleaded former jeopardy and not guilty.

On April 17, 1970, in the criminal case, the trial court (Nelson, J.) sustained the plea of former jeopardy and dismissed the indictment. The State appealed to this court from that ruling.

The parties argued a number of legal issues before us, but in the view we take of the case, the answer to one question determines the appeal. Under Iowa statutes, after a hearing on the merits of a delinquency charge in juvenile court based on commission of a crime, can the child be prosecuted in criminal court for that crime? We consider first the development of the Iowa statutes on juvenile vis-a-vis criminal jurisdiction, and then the present statutory law.

I. We can hardly comprehend at this day that even into the present century children were handled the same as adults at the bar of criminal justice. But the fact is that Iowa did not adopt the juvenile court system until 1904. 30 G.A. ch. 11.

Thereafter and until 1965, the cases of children who committed indictable crimes were handled in either of two ways—in criminal or in juvenile court. The grand jury could indict a child or the county attorney could inform against him, or a petition could be filed against him in juvenile court. This result was reached under a statute providing that "When there is an indictment or a conviction in the district court of any delinquent child of an indictable offense, the district court may, before judgment, if the punishment be not imprisonment for life, or death, transfer the cause to the juvenile court." Code, 1962, § 232.20; State v. Reed, 207 Iowa 557, 218 N.W. 609; Ethridge v. Hildreth, 253 Iowa 855, 114 N.W.2d 311.

Prior to the 1965 session of the Iowa legislature, a committee of probation officers, lawyers, ministers, and others concerned with the welfare of youth made a thorough study of Iowa juvenile court laws

and proposed a complete revision. The committee's proposed bill was enacted in 1965 with few changes. 61 G.A. ch. 215. The new statute provided a comprehensive procedure for investigation, petition, and notice, leading to "The hearing on the merit of the petition". 61 G.A. ch. 215, §§ 4, 5, 6, 9, 12. Provision was made, following the hearing, for disposition for neglect, dependency, or delinquency, if established. §§ 34, 35.

One of the sections of the new statute provided (and still provides) that "The criminal court shall have concurrent jurisdiction with the juvenile court over children less than eighteen years of age who commit a criminal offense." 61 G.A. ch. 215, § 67. Soon after the new statute was enacted, a case came to this court in which a county attorney had informed against a child in criminal court for an indictable crime, as under the old practice. This court held that the old practice was not changed in such respect; under the new concurrent jurisdiction section, a child could be charged as before in criminal or in juvenile court. State v. Stueve, 260 Iowa 1023, 150 N.W. 2d 597. That holding was soon reaffirmed in another decision. Ashby v. Haugh, 260 Iowa 1047, 152 N.W.2d 228.

On March 21, 1966, the United States Supreme Court decided Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed. 2d 84. That case involved an ex parte order by a juvenile court authorizing criminal charges to be filed against a child. The Court emphasized the critical nature of transfer proceedings and the great importance to the child, and held, among other things, that a hearing on the question of transfer is essential.

Kent met with prompt response in Iowa. When the Iowa legislature met again in 1967, it had the Stueve, Ashby, and Kent decisions before it. The legislature added a number of sections to the juvenile court statute, several of which had to do with the respective jurisdictions of the criminal and juvenile courts. 62 G.A. ch. 203. One

section specifically provided that all children appearing in any court other than juvenile court shall, with exceptions not involved here, be immediately transferred to juvenile court. 62 G.A. ch. 203, § 15 (now § 232.64, Code, 1971). Another section, evidently enacted specifically to comply with Kent, dealt with transfer of children by the juvenile court to criminal court. § 23. That section provided (and still provides in § 232.72, Code, 1971):

When a petition alleging delinquency is based on an alleged act committed after the minor's fourteenth (14th) birthday, and the court, *after a hearing,* deems it contrary to the best interest of the minor or the public to retain jurisdiction, the court may enter an order making such findings and referring the alleged violation to the appropriate prosecuting authority for proper action under the criminal law. When such child pleads guilty or is found guilty of a public offense in another court that court may with the consent of the juvenile court refer the child back to juvenile court for further disposition. In any event the court before whom the plea was made or the conviction was had is expressly authorized to set aside such plea or conviction but only after the child has successfully completed a period of probation of not less than one (1) year. (Italics added.)

In 1969 a case came to this court in which a child had been indicted by a grand jury and in which the criminal court had refused to transfer the case to juvenile court. This court reversed, holding that in cases under present §§ 232.64 and 232.72, criminal courts must transfer children to juvenile court. The latter court is the one which determines whether cases of children are to be handled in juvenile or criminal court. Mallory v. Paradise, 173 N.W.2d 264 (Iowa). See also In re Brown, 183 N.W.2d 731 (Iowa). Such is the present state of Iowa law.

II. In the present case, a hearing in juvenile court was held on the merits as

to whether Marcus was delinquent, based on a charge of arson. Marcus contends, as a constitutional matter of double jeopardy, that after such a hearing the State could not try him in criminal court for the same alleged arson. We find consideration of the constitutional aspect unnecessary, because we think the matter is ruled by legislative intent manifested in the present juvenile court statute.

When the legislature overhauled the juvenile court law in 1965, it provided for hearings on petitions charging delinquency. Those hearings were not intended to be on the question of transfer, for at that time juveniles could be charged in criminal court without the intervention of juvenile court. Moreover, the statute spoke and still speaks of such a hearing as "on the merit of the petition". § 232.11, Code, 1971. And such hearings lead to specified dispositions, not including transfer. § 232.34.

Then came Kent, the ensuing statutory requirement in Iowa that children appearing in any court be transferred to juvenile court, and the further provision in § 232.-72 for transfer from juvenile court to criminal court "after a hearing" as Kent requires. In this new § 232.72, the legislature appears to have provided a separate hearing from the one on the merits under existing §§ 232.4 to 232.11. If the legislature had intended that the matters of transfer and of the merits could be the subject of a single hearing, it could simply have added to the sections providing for hearings on the merits the words, "or on the question of transfer to criminal court." Instead, it enacted a separate section dealing only with transfer and providing "a hearing". § 232.72.

We think the background of § 232.72—the decision in Kent requiring a hearing followed by the prompt enactment of § 232.72 providing a hearing—as well as the language of the statute itself, indicate legislative intent to provide a separate hearing on transfer.

Decisions elsewhere are not very helpful because of varying statutory language. New Jersey, however, has a transfer statute somewhat similar to ours. N.J.S.A. § 2A:4-15. In applying such statute the New Jersey Supreme Court held that the transfer hearing is not a hearing on the merits. State v. Van Buren, 29 N.J. 548, 554, 555-556, 150 A.2d 649, 652, 653. Chief Justice Weintraub, speaking for the court, indicated the limited nature of transfer hearings:

> In considering whether a hearing is required and if so its nature, it is necessary to keep in mind what is and is not determined when the juvenile court decides to refer the matter. It is clear that the court does not pass upon guilt of crime or upon the existence of delinquency. Rather the question is whether the cause shall be prosecuted under the criminal statute or under the Juvenile Delinquency Act. *A finding of juvenile delinquency upon the basis of the conduct charged is neither required nor authorized.*" (Italics added.)

He further stated:

> The decision to retain or to relinquish jurisdiction is obviously meaningful to an alleged offender as well as to society, and hence, whatever may be thought of the demands of due process in this situation, fairness to both suggests that there be a hearing to aid the court in reaching a decision. *At the same time, the hearing must be limited to one appropriate to the preliminary nature of the question and the criteria for decision which the juvenile court is required to observe.* (Italics added.)

See also 43 C.J.S. Infants § 98(2) (b) at 234 ("Ordinarily, a *preliminary* inquiry is made by the juvenile court to determine whether the infant shall be proceeded against as a criminal or as a delinquent; if it decides the former, it must transfer the case to the court having jurisdiction." Italics added). See also, Hicks v. State,

249 Ind. 24, 230 N.E.2d 757; Note, 40 S.Cal. L.Rev. 158.

But we think a more basic reason impels the conclusion that a separate hearing on transfer was intended. The inquiry in a transfer hearing is not the same as in a hearing on the merits, and the evidence may not be the same. While a hearing on the merits is of great importance to the child, a transfer hearing may be even more critical. A transfer and an ensuing criminal prosecution may result in incarceration of the child in an adult criminal facility with its attendant environment. Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104; Sargent & Gordon, Waiver of Jurisdiction: An Evaluation of the Process in the Juvenile Court, 9 Crime & Delinquency 121; Schornhorst, The Waiver of Juvenile Court Jurisdiction: Kent Revisited, 43 Ind.L.J. 583; Comment, 52 Iowa L.Rev. 139, 141 ("The focal point of the conflicting demands for punishment and rehabilitation is the waiver determination."). In the transfer hearing the court is concerned with such issues as the amenability of the child to the rehabilitative measures available to the juvenile court, the necessity of safeguarding the public from the child, and the heinousness of the alleged offense. But in a hearing on the merits, especially in a contested one, the juvenile court is seeking the very truth on the ultimate issue of guilt or innocence, and, in the case of guilt, the program most likely to turn the child around and to protect society at large in the process. Different objectives are involved, and separate hearings are indicated.

The State claims that the juvenile court ought to be allowed the flexibility of transferring a child to criminal court if, after a hearing on the merits, a transfer appears preferable to a delinquency adjudication. But if a county attorney is causing juvenile cases to be investigated properly, as this one was investigated, he will know in advance whether he desires to prosecute criminally and he can so move the court at or before the outset of the hearing. He has available the investigative facilities of the probation officer, the law enforcement officers, and the social services staff. Moreover, if, after hearing the county attorney's preliminary statement at the outset of a juvenile hearing, the juvenile court believes that transfer may be indicated, it can, sua sponte, thereupon restrict the hearing to the question of transfer.

We think simple fairness leads to the statutory interpretation that a child who is confronted with a delinquency petition and is put to a hearing is entitled to be apprised of the purpose of the hearing at the outset of it. If the county attorney does not move to transfer or if the court does not announce that the hearing is on the question of transfer before the child's counsel makes his preliminary statement at the hearing or, if no such preliminary statement is made, before the first evidence is introduced, then the child and his counsel may assume that the hearing is on the merits of the delinquency charge; and if the hearing goes forward, the child cannot subsequently be transferred to criminal court for prosecution of an alleged crime which was the basis of the delinquency charge. By the same token, if the county attorney does so move to transfer or if the court does so announce that the hearing is on transfer, then that hearing is so restricted.

Here no such motion by the county attorney or announcement by the court was made. Hence the hearing was on the delinquency charge, and the child could not subsequently be transferred to criminal court for prosecution for the crime on which the delinquency petition was predicated or be indicted for such crime. The trial court rightly dismissed the indictment in the criminal case.

Affirmed.

All Justices concur except REES, J., MOORE, C. J., and LeGRAND, J., who dissent.

REES, Justice (dissenting).

I find myself unable to agree with the majority, and respectfully dissent.

Concededly, the petition filed in the Juvenile Court of Clayton County, pursuant to order authorizing its filing, charged the defendant with being a delinquent child within the meanings of the statutes defining delinquency, and in order to support the claim of delinquency asserted that on the 24th day of August, 1969 the defendant committed the crime of arson by setting fire to two school buildings in the town of Elkader, contrary to section 707.2, The Code, 1966.

The record reflects that:

"Before the beginning of testimony the court discussed with the Clayton County Attorney the question of whether or not an indictment or information had been filed. Since neither had been filed the court inquired to (sic) the county attorney if he anticipated instituting the matter in the district court should the juvenile court not retain jurisdiction. The county attorney replied affirmatively."

The record goes on to reflect that the court thereupon made the following preliminary statement in the record:

"THE COURT: Before we hear the first witness, it is the Court's view that this is a regular hearing on a petition charging delinquency and at this time the State and the juvenile may present any or all relative evidence concerning the question of delinquency and as to whether the court should or will make a finding of delinquency. . . . "

We agree with the majority that a full-blown juvenile hearing on the merits followed, the court hearing 17 witnesses regarding the fires and the claimed connection of the defendant with them, examining 29 exhibits, hearing a psychiatric evaluation of the defendant and receiving a written report of the social investigation by a social welfare agency. Following such hearing the court entered its judgment,

finding defendant would not benefit from juvenile court facilities, but that the evidence was sufficient to warrant a criminal charge, and ordered the matter referred to the Clayton County Attorney for proper action under criminal law. All of the foregoing proceedings took place before the Clayton County Juvenile Court, Judge Oberhausen presiding.

Subsequently, the Grand Jury of Clayton County indicted the defendant for arson. A written plea was filed by the defendant, asserting that he had been formerly acquitted of the offense charged in the indictment by judgment of the Juvenile Court of Clayton County, or alternatively, that he was not guilty of the offense charged in the indictment. The Clayton County Court, Judge T. H. Nelson presiding, who dismissed the indictment, held:

"The finding that delinquency was not proven necessarily means that the crime of arson was not proven to have been committed by the defendant, and that it therefore was an established fact as between the State and the defendant that the defendant did not commit arson."

I. With the finding of the trial court (Nelson, J.) that the Juvenile Court had previously determined defendant had not committed arson, and therefore criminal prosecution was barred under the doctrines of prior jeopardy and res judicata, I cannot agree. If such had been the finding of the Juvenile Court, I do agree that fundamental fairness would bar criminal prosecution. In my opinion the Juvenile Court merely found there was sufficient evidence to support the accusation of arson, but that the social and psychiatric reports and other evidence before it were not "sufficiently clear and convincing to warrant a finding of delinquency or that this juvenile at this time can benefit from the facilities available to this court for his future care and supervision."

II. The historical development of our present juvenile court law has been adequately detailed by the majority. I have

no difficulty in agreeing with the majority that the enactment of section 232.72, The Code 1971, in 1967, was motivated by the pronouncements of the Supreme Court of the United States in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). [Kent involved an ex parte order by a juvenile court authorizing criminal charges to be filed against a child.] However, I do not agree section 232.72 provides for a separate hearing other than the hearing provided for by sections 232.4–232.11, The Code. Section 232.72 merely sets up the mechanics of transfer to criminal prosecution, and requires a "hearing". The reference to "hearing" is obviously referable to a hearing under sections 232.4–232.11, and does not necessitate the holding of a separate hearing. Kent requires a hearing on transfer only and does not involve the merits of the matter under scrutiny herein. It arose under entirely different circumstances than those present in the case before us. In Kent, the defendant was arrested for rape, robbery and housebreaking. Because he was 16 years of age, he was subject to the exclusive jurisdiction of the Juvenile authorities. However, the District of Columbia Code allowed the Juvenile Court to waive jurisdiction for trial in the District Court. The Juvenile Court, *without a hearing*, without talking to the defendant, or to his parents, entered an order waiving jurisdiction to the District Court, and stated it had made a full investigation. On subsequent trial in District Court, Kent was found not guilty by reason of insanity on the charge of rape, but on six counts of housebreaking and robbery he was found guilty, and was later sentenced to five to 15 years on each count. The judgment of conviction was affirmed by the Circuit Court of Appeals.

The distinction between Kent and the matter before us, simply stated, is that in Kent the defendant had been denied *any* hearing on the waiver, and in the matter before us, it is asserted the hearing went too far and that therefore jeopardy attached. Kent did not hold or even logically infer that the hearing must be closely circumscribed and limited to the transfer issue. The following selected quotations from Kent, I deem to be particularly applicable to the matter under consideration by us here. At 86 S.Ct. 1053–1054, we find:

"We do not consider whether, on the merits, Kent should have been transferred; but there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner. It would be extraordinary if society's special concern for children, as reflected in the District of Columbia's Juvenile Court Act, permitted this procedure. We hold that it does not."

Further, at page 1055, the Court said:

"It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile.
* * *

" * * * In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the District Court was potentially as important to petitioner as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel."

And, again, at page 1057, the Court said:

"Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

"Correspondingly, we conclude that an opportunity for a hearing which may be informal, must be given the child prior to entry of a waiver order. Under Black [v. United States, 122 U.S.App. D.C. 393, 355 F.2d 104 (1965)], the child is entitled to counsel in connection with a waiver proceeding, and under Watkins [v. United States, 119 U.S.App.D.C. 409, 343 F. 278 (1964)], counsel is entitled to see the child's social records. These rights are meaningless—an illusion, a mockery—unless counsel is given an opportunity to function.

\*      \*      \*      \*      \*      \*

"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment. Pee v. United States, 107 U.S.

App.D.C. 47, 50, 274 F.2d 556, 559 (1959)."

From the foregoing it appears there must be a full hearing on waiver. I am unable to conclude the hearing in the case before us violated the fundamental fairness test. Nor am I able to interpret section 232.72, The Code, to require a separate hearing on transfer. The enactment of section 232.72, The Code, made treatment of a child as a juvenile mandatory unless waived to the District Court after a hearing necessitated by Kent as reasoned by the majority. However, the hearing provided for by section 232.72 is not required to be separate from the hearings provided for in sections 232.4 to 232.11, inclusive.

It occurs to me it would be illogical to permit the Juvenile Court to marshal as much information as possible before making its determination of waiver, and to then conclude because the hearing involved *too much*, that jeopardy attached in a juvenile hearing. We do not understand the Juvenile Court's findings and judgment before us to be a finding and adjudication the defendant had not committed arson. It found there was sufficient evidence to support the accusation of arson, but that the social and psychiatric reports and other evidence were not sufficiently clear to warrant a finding of delinquency. Judge Nelson, relying on section 232.2(13)a, which defines a delinquent child, held the cited section "does not say that the juvenile court may, in its discretion, find such a child delinquent, nor does it require the finding of any other circumstances with regard to the child." We concede this is true, but we do not believe the Legislature in so defining a delinquent intended to deprive the Juvenile Court of the discretion and flexibility carefully preserved in other sections of the chapter. I believe the Legislature meant to make one violation enough to make the child a delinquent, but did not mean to require a finding of delinquency based upon one violation of law. Such a holding would deprive the Juvenile Court of the alternative of withholding a finding

of delinquency and transferring jurisdiction when the petition alleged delinquency based on a single criminal act. Such an interpretation would make duplicate hearings a necessity in every juvenile case. The Legislature obviously did not intend such a result and provided for one combined hearing.

In my view the Juvenile Court's failure to find delinquency under the circumstances was not tantamount to a finding defendant was not guilty of the crime of arson.

I would therefore reverse the judgment of the trial court, and remand the case for further proceedings.

MOORE, C. J. and LeGRAND, J., join in this dissent.