In the Interest of M.M.C., A Minor Child,

**State of Iowa, Appellant.**

No. 96–1688.

Supreme Court of Iowa.

May 21, 1997.

Thomas J. Miller, Attorney General, Kathrine S. Miller–Todd, Assistant Attorney General, R. Steven Johnson, County Attorney, and John C. Heinicke, Assistant County Attorney, for appellant.

John D. Brown of Berkland & Brown, Emmetsburg, for appellee.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

A thirteen-year-old juvenile was charged with murder in the first degree. After a delinquency petition was filed, the juvenile entered a plea of guilty to the delinquency charge of second-degree murder. Following a combined adjudicatory and dispositional hearing, the court ordered the juvenile to be placed in the custody and guardianship of the Iowa Department of Human Services (DHS) for commitment to the state training school until the juvenile's eighteenth birthday.

Two years later the juvenile court, at a dispositional review hearing, ordered the juvenile, then fifteen years old, to be released from the training school and placed on probation in the custody of his parents. The State immediately filed a notice of appeal and a motion for stay. The motion to stay was granted. On appeal, we reverse the court's delinquency review order and remand.

I. *Background Facts and Proceedings.*

On June 9, 1994, Tim Gorball, age thirteen, was found dead on the floor of his parents' garage. Tim died from three gunshots from a 20–gauge shotgun. All three shots were fired at close range, within an eighth of an

inch. The first shot was to the back, the second was to the chest, and the third shot was into the eye, causing virtual destruction of the skull and brain.

M.M.C. (hereafter referred to as "Mark"), age thirteen, was questioned about the death. After initially denying any involvement, Mark suggested Tim had accidentally shot himself. Later, Mark suggested he had accidentally fired the first shot and that the second and third shots were made because Tim begged him to put him out of his misery. Police investigation revealed that after the shooting Mark took the shotgun back to his parents' home, wiped it clean, and then returned it to its original location. He then went on as though nothing had happened. The police charged Mark with murder.

After Mark's admissions on the evening of the murder, he was placed in a detention center. A delinquency petition alleging murder in the first degree was filed on June 10. A detention hearing was waived and an adjudicatory hearing was set for September 21. Because Mark was not fourteen years of age or older, the county attorney could not request that the juvenile court waive its jurisdiction over Mark and transfer the case for criminal trial in district court. *See* Iowa Code § 232.45 (1993). Before the hearing date, it was agreed that Mark would enter a guilty plea to murder in the second degree and that a dispositional hearing would also be set for September 21.

At the combined adjudicatory and dispositional hearing, the juvenile court found that Mark's plea was voluntarily and intelligently entered and that there was a factual basis for the plea. The court found that Mark had intended to kill Tim and that an inference of malice aforethought arose from the use of a dangerous weapon. The court adjudicated Mark had committed the delinquent act of second-degree murder and ordered he be placed in the custody and guardianship of DHS for commitment to the training school at Eldora until his eighteenth birthday. No appeal was taken from the court's adjudication and dispositional findings and order.

The juvenile court continued the placement of Mark at the training school following a September 1995 delinquency review hearing.

In September 1996, following a review hearing, the court entered an order that released Mark from the training school and placed him on probation. The court stated:

In selecting a placement for children adjudicated to have committed delinquent acts, the court must make the appropriate disposition considering the seriousness of the wrongful act, the child's culpability, his age, and his prior record. The court must consider all of the traditional factors dealing with rehabilitation. In ordering placement at the state training school, the court may consider punishment in the best interests of the child as well as the need to protect the public.

. . . .

Balancing the interests of society and those of the respondent child, the court concludes that placement at the state training school has served well. But that placement is no longer the appropriate one. The time has arrived, as it soon must arrive in any event, that [Mark] should be released, on probation, on conditions imposed by the court officer in the custody of his parents.

■ The State appealed this delinquency review order. Our scope of review in delinquency appeals is de novo. *In re D.L.C.*, 464 N.W.2d 881, 882 (Iowa 1991).

II. *Juvenile Justice.*

Iowa did not adopt a juvenile court system until 1904. 1904 Iowa Acts ch. 11. Before the adoption of a juvenile court system, children were handled the same as adults in criminal court. *State v. Halverson*, 192 N.W.2d 765, 766 (Iowa 1971). Under the common law rule, children over seven years old who committed crimes were prosecuted as adult criminals if they were capable of possessing criminal intent. After 1904 and until 1965, children who committed indictable crimes could be prosecuted in criminal court or handled in juvenile court. *Id.* Following a thorough study of Iowa juvenile court laws, the legislature adopted a complete revision of the juvenile laws in 1965. 1965 Iowa Acts ch. 215. Under this revision the criminal court had concurrent jurisdiction with the juvenile

court over children less than eighteen years of age who committed a criminal offense. *Id.* § 67. An adult was defined as a person over twenty-one years of age, a minor was a person less than twenty-one years of age, and a child was a person less than eighteen years of age. *Id.* § 3.

Following the United States Supreme Court decision in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Iowa legislature revised the law to give the juvenile court exclusive original jurisdiction in proceedings concerning any child alleged to be delinquent or dependent. 1967 Iowa Acts ch. 203, § 14. The amendment further provided for a waiver of the court's jurisdiction following a hearing. *Id.* §§ 23, 24. If the petition alleges delinquency based on an alleged act committed after the child's fourteenth birthday, the juvenile court can refer the alleged violations to the appropriate prosecuting authority for proper action under the criminal law, provided there has not been an adjudication of delinquency in juvenile court. *Id.* § 23.

The juvenile justice laws were again revised in 1978. 1978 Iowa Acts ch. 1088. The revised law specifically provided for both adjudicatory and dispositional hearings of a child alleged to have committed a delinquent act. *Id.* §§ 27, 30. The dispositional orders were subject to termination, modification, or substitution upon motion, notice, and hearing. *Id.* § 34.

We recognize the primary goal of juvenile justice in Iowa is rehabilitation, not punishment. The juvenile court cannot waive jurisdiction of a child charged with a public offense to allow criminal prosecution as an adult unless the State establishes there are no reasonable prospects for rehabilitation if the court retains jurisdiction. *See* Iowa Code § 232.45 (1995). The placement of a child in a state institution requires the court to find the placement to be in the best interests of the child or necessary for the protection of the public. *See id.* § 232.52(2)(e). Juvenile statutes are to be "liberally construed to the end that each child . . . receive . . . the care, guidance and control that will best serve the child's welfare and the best interest of the state." *Id.* § 232.1.

### III. *Delinquency Review Hearing.*

After the juvenile court has found a child to have committed a delinquent act, the court must conduct a dispositional hearing where a predispositional report is submitted to the court and all parties are permitted to offer relevant and material evidence. Iowa Code §§ 232.48(2), .50(3). Iowa law requires that the court enter the least restrictive dispositional order appropriate in view of the (1) seriousness of the delinquent act, (2) the child's culpability as indicated by the circumstances of the particular case, (3) the age of the child, and (4) the child's prior record. *Id.* § 232.52(1). The dispositional orders that a juvenile court may enter are enumerated by statute. *Id.* § 232.52(2)(a)–(f). Included in the list of permitted orders is the order initially entered here. The statute specifically allows

> [a]n order transferring the guardianship of the child . . . to the director of the department of human services for purposes of placement in the state training school or other facility, provided that the child is at least twelve years of age and the court finds the placement to be in the best interests of the child or necessary for the protection of the public, and that the child has been found to have committed an act which is a forcible felony [1] . . . .

*Id.* § 232.52(2)(e). Additionally, where legal custody of a child has been transferred, the court may grant, on motion of the child or the child's parent, an order to terminate, modify, or vacate a dispositional order. *Id.* § 232.103(3).

After the initial dispositional order is entered, and where legal custody of the child has been transferred, the court must hold a periodic dispositional review hearing to determine the future dispositional status of the child. *Id.* § 232.50(2). The hearing cannot be waived or continued beyond eighteen months after the last dispositional hearing or dispositional review hearing. *Id.* Generally, any dispositional order of a child found to have committed a delinquent act remains in

---

1. Murder is a forcible felony. Iowa Code § 702.11.

force until the child becomes eighteen years of age. *Id.* § 232.53.

IV. *Disposition.*

■ The juvenile court properly considered the seriousness of the wrongful act, Mark's culpability, his age, and his prior record. It recognized that if Mark had been fourteen years old at the time of Tim's death, the juvenile court could have transferred jurisdiction to the district court for proper action in criminal proceedings. If convicted of second-degree murder, Mark would have been sentenced to serve a period of confinement of not more than fifty years. *Id.* § 707.3.

The court found Mark had received appropriate rehabilitative care while at the training school, but that placement at the training school was no longer appropriate.

Based upon our de novo review of the delinquency review hearing record, we conclude Mark should continue in the custody of DHS with commitment at the training school. Iowa Code section 232.52(1) identifies four factors to be considered when entering a dispositional order but does not assign weight to be given each factor. We believe the gravity of the offense committed by Mark outweighs all other factors. Release from the training school two years after commitment would convey to Mark and the public that murder is not an extremely serious crime. We do not think the potential benefit of rehabilitation while in the custody of his parents outweighs the potential benefit of rehabilitation of Mark by continuing his commitment at the training school. Tim's death was not an accident. Rehabilitation of Mark requires his acceptance of responsibility for his act and the consequences thereof. We reverse the juvenile court's September 1996 review order and remand for entry of an order continuing Mark's placement at the training school.

**REVERSED AND REMANDED.**

All justices concur except HARRIS, J., who concurs specially.

HARRIS, Justice (concurring).

I agree that Mark's commitment at the training school should continue, but not alone because of the gravity of his crime. Notwithstanding its crucial importance, the seriousness of a crime committed by a child is only one factor involved in juvenile court dispositions. It should not by itself control the outcome.

I concur because I think continuing commitment is necessary for Mark's rehabilitation. The record indicates he has not adequately come to terms with the enormity of his crime and, perhaps for that reason, has not yet established the values required for citizenship. For his own good, Mark needs more time in the training school.

I concur in the result.