# IN THE COURT OF APPEALS OF IOWA

No. 21-1594
Filed February 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAGGER LE ERDMAN,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Washington County, Daniel P. Kitchen (waiver order), District Associate Judge, and Myron L. Gookin (trial and sentencing), Judge.


Dagger Erdman appeals his conviction for second-degree sexual abuse. **AFFIRMED.**


Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.


Considered by Tabor, P.J., Ahlers, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**DOYLE, Senior Judge.**

Dagger Erdman appeals his conviction for second-degree sexual abuse for touching the vagina of a nine-year-old child. Because Erdman was seventeen years old when the act took place, the State first petitioned the juvenile court to adjudicate Erdman delinquent. After the juvenile court waived jurisdiction to allow the State to prosecute Erdman as an adult, he was tried in district court and a jury found him guilty. On appeal, Erdman challenges both the waiver ruling and the evidence of his guilt.

**I. Waiver of Jurisdiction.**

Erdman first challenges the juvenile court's waiver of jurisdiction. We generally review juvenile proceedings de novo. *State v. Tesch*, 704 N.W.2d 440, 447 (Iowa 2005). Because Iowa Code section 232.45 (2019) vests the juvenile court with discretion in deciding whether to waive jurisdiction of a juvenile offender, we reverse only if the juvenile court abused its discretion. *See id.*

The juvenile court can waive jurisdiction over a juvenile charged with committing a delinquent act to allow prosecution as an adult when three requirements are met:

> a. The child is fourteen years of age or older.
> b. The court determines, or has previously determined in a detention hearing under section 232.44, that there is probable cause to believe that the child has committed a delinquent act which would constitute the public offense.
> c. The court determines that the state has established that there are not reasonable prospects for rehabilitating the child if the juvenile court retains jurisdiction over the child and the child is adjudicated to have committed the delinquent act, and that waiver of the court's jurisdiction over the child for the alleged commission of the public offense would be in the best interests of the child and the community.

Iowa Code § 232.45(6). In determining whether the third element exists, the court must consider:

> a. The nature of the alleged delinquent act and the circumstances under which it was committed.
> b. The nature and extent of the child's prior contacts with juvenile authorities, including past efforts of such authorities to treat and rehabilitate the child and the response to such efforts.
> c. The programs, facilities and personnel available to the juvenile court for rehabilitation and treatment of the child, and the programs, facilities and personnel which would be available to the court that would have jurisdiction in the event the juvenile court waives its jurisdiction so that the child can be prosecuted as an adult.

*Id.* § 232.45(8). The court may consider other relevant factors. *See id.* (stating that "the factors which the court shall consider include but are not limited to" those outlined set out in paragraphs (a) through (c)); *Tesch*, 704 N.W.2d at 447 (noting the factors in section 232.45(8) are "nonexhaustive").

In the ruling waiving jurisdiction, the juvenile court restated the requirements of section 232.45. It found that Erdman met those requirements because he was over fourteen, there was probable cause to believe he committed a delinquent act that would constitute a public offense, and there were no reasonable prospects for his rehabilitation if he remained in its jurisdiction. In determining Erdman's prospects for rehabilitation, the court rejected Erdman's claim that he could be rehabilitated at the state training school if he began there before he turned eighteen, finding the state training school was not an option for him. It also found that even if Erdman were adjudicated delinquent, evaluated for a sex offender program, and admitted into a program before he turned eighteen, there was "no reasonable prospect of rehabilitation prior to the court losing jurisdiction and the ability to enforce treatment."

Erdman argues the juvenile court abused its discretion because it waived jurisdiction without considering all the factors outlined in section 232.45(8). He notes its ruling never discusses the nature and extent of his prior contacts with juvenile authorities and engaged in "virtually no discussion" of the programs available if jurisdiction were waived. He also complains there is no discussion about the community's best interests.

The juvenile court properly exercised its discretion in waiving its jurisdiction over Erdman to allow him to be tried as an adult. The evidence presented at the waiver hearing addressed the factors set out in section 232.45(8). The chief concern was whether Erdman could be rehabilitated in the six months before he turned eighteen, and the bulk of the hearing focused on that. A juvenile court officer testified that more than six months of rehabilitation was needed because of the seriousness of Erdman's offense. But Erdman did not meet the placement criteria for the state training school,[1] which the officer testified was the only available facility that would keep Erdman after he turned eighteen. Although Erdman claimed other programs were available, he failed to present evidence of any. The record supports a finding that Erdman could not be rehabilitated under juvenile court jurisdiction, an appropriate basis for waiving jurisdiction. *See State*

---

[1] Iowa Code section 232.52(2)(e) requires that three of four requirements be met before transferring custody of a child to the state training school. Although Erdman's age and the act he was accused of committing satisfy the first two, *see* Iowa Code § 232.52(2)(e)(1), (2), Erdman had no prior delinquencies as required to meet either the third or fourth, *see id.* § 232.52(2)(e)(3), (4). *See also In re C.G.B.*, 643 N.W.2d 208, 211 (Iowa Ct. App. 2002) ("Cassie was not previously found to have committed the delinquent act . . . . Absent this finding, the State cannot prove three of the four conditions under section 232.52(2)(e) exist, and Cassie's placement at the state training school must fail.").

*v. Bickell*, 493 N.W.2d 100, 103 (Iowa Ct. App. 1992) (holding no abuse of discretion in juvenile court's waiver of jurisdiction where it "considered the rehabilitation opportunities provided by both systems and concluded rehabilitation could not occur under the jurisdiction of the juvenile court"). Finding no abuse of discretion, we affirm the juvenile court's order.

**II. Sufficiency of the Evidence.**

We then turn to Erdman's claim that insufficient evidence supports his conviction. We review this claim for correction of errors at law. *See State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). "Under this standard, the court is highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* Evidence is substantial if it may convince a rational person of the defendant's guilt beyond a reasonable doubt. *Id.* In making this determination, we view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *Id.* The question is whether the evidence supports the finding the jury made, not whether it would support a different finding. *Id.*

Erdman argues the evidence fails to show he committed second-degree sexual abuse, claiming that "the only evidence against [him] was the testimony of [the child]." The child testified at Erdman's trial about a visit to Erdman's house when she was nine. The child explained that she was lying underneath a blanket while watching television with Erdman lying next to her. At one point, Erdman moved closer and got underneath the blanket with her. The child testified that Erdman put his hand down her shorts and beneath her underwear to touch her vagina. She stated, "He was, like, patting, and then he was, like, touching around."

After he removed his hand, the child saw him put it down the front of his pants. When the child left a short time later, Erdman asked if she "was going to tell anyone."

The child's testimony is substantial evidence that Erdman committed second-degree sexual abuse. "A sexual abuse victim's testimony alone may be sufficient evidence for conviction." *State v. Donahue*, 957 N.W.2d 1, 10–11 (Iowa 2021). Claiming that such evidence "is not credible enough to convince a rational fact finder of his guilt beyond a reasonable doubt is unavailing for sufficiency of the evidence purposes." *Id.* Although Erdman disputed the child's account, "it is for the jury to judge the credibility of the witnesses and weigh the evidence." *State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999).

Because substantial evidence supports Erdman's conviction, we affirm.

**AFFIRMED.**

Ahlers, J., concurs; Tabor, P.J., partially dissents.

**TABOR, Judge.** (concurring in part, dissenting in part)

"It is clear beyond dispute that the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." *Kent v. United States*, 383 U.S. 541, 556 (1966).[2]  In Iowa, "[t]he juvenile court cannot waive jurisdiction of a child charged with a public offense to allow criminal prosecution as an adult unless the State establishes there are no reasonable prospects for rehabilitation if the court retains jurisdiction." *In re M.M.C.*, 564 N.W.2d 9, 11 (Iowa 1997).  Respectfully, I don't think the majority holds the State to that burden.

When assessing whether the State met its burden, courts must focus on the non-exhaustive list of factors in Iowa Code section 232.45(8) (2019), which include: (1) the nature and circumstances of the act; (2) the child's prior involvement with juvenile authorities and response to past rehabilitation efforts; and (3) the programs and facilities available for rehabilitation and treatment in the adult and juvenile courts.  In its waiver decision, the juvenile court listed these factors, but did not analyze them.  The majority excuses that shortcut, asserting that the State presented evidence at the waiver hearing addressing those factors.

While true, only the first factor supported waiver to adult court.  On that first factor, the State presented evidence on the seriousness of Erdman's sexual offense against a nine-year-old girl.  But on the second factor, the State presented evidence that this offense was Erdman's first contact with juvenile authorities.  A

---

[2] This concept is enduring.  *See Breed v. Jones*, 421 U.S. 519, 535 (1975) ("The possibility of transfer from juvenile court to a court of general criminal jurisdiction is a matter of great significance to the juvenile.").

factor he argues should have weighed heavily against waiver. That second factor ended up obscured by the spotlight on the third factor. As the majority explains, the State's evidence focused on whether Erdman could be rehabilitated in the six months between the waiver hearing and his eighteenth birthday in April 2020.[3] To that end, the juvenile court officer testified: "Due to the seriousness of the offense, the rehabilitative efforts that the Juvenile Court Office [(JCO)] has available to them would not be sufficient in the time frame that we have available to us." She continued: "The problem is that we only have placement facilities available to us until a child turns eighteen."

On cross-examination, the officer clarified that timing drove her recommendation that Erdman be waived to adult court:

> In a sex abuse case, normally a child is evaluated and then recommended for treatment. The treatment is an intense treatment that lasts at least six months; and at this point without an adjudication or a conviction, we don't have six months in order to provide that treatment if the evaluation was even done.

But the child's counsel pointed out that under section 232.53(2), "[d]ispositional orders entered subsequent to the child attaining the age of seventeen years and prior to the child's eighteenth birthday shall automatically terminate one year and six months after the date of disposition." And the officer agreed the dispositional order could extend beyond Erdman's eighteenth birthday. So counsel then cited section 232.53(4), which allows a child committed to the

---

[3] The short time frame was of the State's own making. Erdman perpetrated the sex offense in late May 2019, one month after his seventeenth birthday. The sheriff's office completed its investigation in early July. But the county attorney's office did not file its delinquency petition and motion to waive jurisdiction until mid-September. And the waiver hearing did not occur until October 22.

state training school to stay eighteen months past their eighteenth birthday, and asked: "[I]f that's the case and treatment lasts six months, how did the JCO's office not have sufficient time?"

The officer answered: "If he would not be able to do the service within the community, we don't have a placement facility other than the State Training School that he could go to and then he would have to meet the criteria for the State Training School." On redirect, the officer explained that although it has a program for sex offenders, the State Training School is "not usually recommended as the first placement for anyone." At the close of the hearing, the juvenile court noted that Erdman did not meet the criteria for placement at the State Training School because he had no prior delinquency adjudications. *See* Iowa Code § 232.52(2)(e)(3), (4).

So because he was not a hard-core delinquent, Erdman could not go to the State Training School and the juvenile court had no other choice but to waive him to adult court. What a topsy-turvy result. And what about other alternatives? At the hearing, Erdman's counsel maintained that there were "programs available involving intense treatment for adults in the JCO's office that he could take advantage of once he is on probation." On appeal, the State argues: "While [Erdman] believed there may be adult programs that could be utilized, he did not present any evidence of their existence or whether [Erdman] qualified for them at the hearing." The majority echoes that refrain: "Although Erdman claimed other programs were available, he failed to present evidence of any."

Problem is, it was not Erdman's burden to search out a viable placement outside the State Training School. It was the State's burden to show Erdman had

no reasonable prospects for rehabilitation if the juvenile court retained jurisdiction. The State failed to present evidence that Erdman could not be held accountable beyond April 2020 if he did not complete sex offender treatment. *In re T.D.*, 335 N.W.2d 638, 639 (Iowa Ct. App. 1983) (discussing section 232.53(2) and rejecting argument that juvenile court had no leverage over child after they turned eighteen). But neither the juvenile court nor the majority look past Erdman's eighteenth birthday.

One more thing was missing from the waiver ruling. The juvenile court did not say why waiver to adult court was in the best interests of the child or the community as required by section 232.45(6)(c). *See State v. Tesch*, 704 N.W.2d 440, 449 (Iowa 2005). Without that finding, even with our de novo review, it is difficult to tell whether the juvenile court properly exercised its discretion.

On this record, I would reverse the waiver order. As for the sufficiency of the evidence, I agree with the majority's analysis.